CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

9/18/2023

LAURA A. AUSTIN, CLERK
BY: s/ C. Amos
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **SHANTA LYNETTE BROWN** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **AQUASHA SANDIDGE,** | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE CITY OF LYNCHBURG** | ) | **CASE NO.:    6:23CV00054** |
| | ) | |
| **and** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **LPD OFFICER SETH REED** | ) | |
| *in his individual capacity* | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DEPUTY ZACHARY MILLER,** | ) | |
| *in his individual capacity* | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **LPD OFFICER ROBBIN MILLER,** | ) | |
| *in his individual capacity,* | ) | |
| *Defendants*. | ) | |

**COMPLAINT**

COME NOW the Plaintiffs, Shanta Lynette Brown and Aquasha Sandidge, and bring this civil rights action to recover damages arising from the injuries they sustained when their Fourth Amendment rights were violated during their unlawful apprehension, detention, false arrest and malicious prosecution by officers of the Lynchburg Police Department on or about April 28, 2020.  Plaintiffs assert federal claims pursuant to 42 U.S.C. § 1983 for false imprisonment, malicious prosecution and excessive force as well as common law civil claims for (i) false

imprisonment, (ii) malicious prosecution, (iii) assault and battery, (iv) gross negligence and (v), willful, wanton and reckless negligence.

## JURISDICTION AND VENUE

1.      This action arises under federal law and the Fourth and Fourteenth Amendments to the United States Constitution.

2.      This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1983 and 1985.

3.      This Court has supplemental jurisdiction over the state claims asserted in this action pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district under 28 U.S.C. §1391(b), because (i) each of the named defendants is a resident of the Western District of Virginia pursuant to 28 U.S.C. §1391(c)(2), and (ii) pursuant to 28 U.S.C. §1391(b)(2) all of the events or omissions giving rise to the claims occurred in the City of Lynchburg in the Western District of Virginia.

## PARTIES

5.      Plaintiff SHANTA LYNETTE BROWN ("MS. BROWN") is an adult resident of the City of Lynchburg and is the mother of Plaintiff AQUASHA SANDIDGE.

6.      Plaintiff AQUASHA SANDIDGE ("MS. SANDIDGE") is an adult resident of the City of Lynchburg and is the daughter of Plaintiff SHANTA LYNETTE BROWN.

7.      Defendant CITY OF LYNCHBURG is a city incorporated pursuant to the laws of the Commonwealth of Virginia. The CITY OF LYNCHBURG operates the Lynchburg Police Department ("LPD").

8.      Defendant SETH REED ("SETH REED") is a police officer employed by the Lynchburg Police Department.

9.      Defendant ZACHARY MILLER ("ZACHARY MILLER") was a police officer employed by the Lynchburg Police Department on April 28, 2020 and is currently a Deputy Sheriff in Amherst County.

10.     Defendant ROBBIN MILLER ("ROBBIN MILLER") is a police officer employed by the Lynchburg Police Department.

**FACTS**

11.     At all times pertinent to this Complaint, SETH REED, ZACHARY MILLER and ROBBIN MILLER were acting within the scope of their employment and under the the color of state law as sworn LPD officers.

12.     At all times pertinent to this Complaint, MS. BROWN lived with her adult son, Terron Pannell, and her adult daughter, MS. SANDIDGE, at the Jobber's Overalls apartment building located at 1503 Kemper Street in the City of Lynchburg.

13.     On April 28, 2020, MS. BROWN was a correctional officer employed in good standing with the Virginia Department of Corrections and she had held that position since September 25, 2017.

14.     On April 28, 2020 at approximately 10:08 p.m., ZACHARY MILLER was on-duty and in a parked, uniformed LPD patrol vehicle near a warehouse on Kemper Street, when he observed a vehicle with a missing front license plate travel past him.

15.     The vehicle was being driven by MS. BROWN's eighteen year old son, Terron Pannell, who was the sole occupant of the vehicle.

16.     ZACHARY MILLER initiated a traffic stop just as the vehicle parked in a marked space in the parking lot in front of the Jobber's Overalls apartment building at 1503 Kemper Street in the City of Lynchburg, where Terron Pannell lived with MS. BROWN and MS. SANDIDGE.

17.     ZACHARY MILLER parked his police vehicle in the middle of the parking lot with its headlights shining on the stopped vehicle and Terron Pannell, who remained in the driver's seat.

18.     MS. BROWN and MS. SANDIDGE were inside their apartment at 1503 Kemper Street when MILLER initiated the traffic stop.

19.     MS. BROWN and MS. SANDIDGE observed the traffic stop from the window of their apartment and so they left the apartment and walked to the front of the building, where they stood in front of the stopped vehicle.

20.     Lacking any reasonable or articulable suspicion to believe that the stopped vehicle contained any contraband, ZACHARY MILLER called for the assistance of a canine unit to respond to the scene in order to conduct a sniff for drugs.

21.     ZACHARY MILLER approached the vehicle and Terron Pannell informed ZACHARY MILLER that he did not have a driver's license and that he had borrowed the car from a neighbor to drive to buy food.

22.     ZACHARY MILLER obtained Pannell's name and social security number and returned to his police vehicle.

23.     ZACHARY MILLER unlawfully delayed issuing traffic summonses to Pannell in order to buy time for the canine unit to respond.

24.     In the interim, LPD Officer Tereika Grooms, having been dispatched to the scene under department policy that provides backup officers during after-dark traffic stops, arrived as backup to ZACHARY MILLER.

25.     ZACHARY MILLER asked Officer Grooms to try to obtain consent from Terron Pannell to search the car while ZACHARY MILLER remained in his police vehicle and waited for the canine unit to arrive.

26.     Officer Grooms attempted to obtain consent from Terron Pannell to search the vehicle.

27.     Terron Pannell refused consent to the search of the vehicle and Officer Grooms informed ZACHARY MILLER that consent to search had been denied.

28.     SETH REED arrived on scene, conferred briefly with ZACHARY MILLER and then approached the driver's window of the stopped vehicle.

29.     SETH REED ordered Terron Pannell out of the stopped vehicle, ostensibly by LPD policy to allow the canine to conduct a drug sniff of the vehicle.

30.     Terron Pannell expressed his fear of SETH REED and refused to leave the vehicle.

31.     Although he refused to leave the vehicle, Terron Pannell was polite and respectful to SETH REED at all times, addressing him as "sir."

32.     Terron Pannell was eighteen years old, 5' 10" tall and weighed 160 pounds.

33.     SETH REED was 6' tall and weighed 215 pounds.

34.     ZACHARY MILLER was 6' tall and weighed more than 250 pounds.

35.     SETH REED and ZACHARY MILLER grabbed Terron Pannell, pulled him from the vehicle, slammed him face down into the pavement, handcuffed his arms behind his back and then walked him to ZACHARY MILLER's patrol vehicle in the middle of the parking lot.

36.     SETH REED and ZACHARY MILLER used unlawful and unreasonable force against Terron Pannell.

37.     SETH REED and ZACHARY MILLER held Terron Pannell at the side of ZACHARY MILLER's patrol vehicle and, without explanation, demanded that he spread his legs and then, just a few seconds later, without warning, SETH REED and ZACHARY MILLER again slammed Terron Pannell into the pavement.

38.     SETH REED placed his knee in Terron Pannell's back and pressed him into the pavement.

39.     A growing crowd of residents and spectators grew angry at SETH REED and ZACHARY MILLER and began to loudly protest at the manner in which they used force against Terron Pannell.

40.     A call for assistance went out over the radio in response to the growing protest and every available LPD officer responded to the scene.

41.     MS. BROWN witnessed both uses of force by SETH REED and ZACHARY MILLER against her son, Terron Pannell.

42.     Terron Pannell began to scream for his mother as SETH REED and ZACHARY MILLER drove him face down into the pavement.

43.     MS. BROWN ran towards Terron Pannell in response to his screams.

44.     MS. SANDIDGE followed MS. BROWN toward Terron Pannell, but never got as close to him as MS. BROWN did, because Officer Grooms stood between MS. SANDIDGE and MS. BROWN.

45.     MS. SANDIDGE was video-recording the incident on her smart phone.

46.     MS. BROWN never touched SETH REED or ZACHARY MILLER when she ran towards her son.

47.     Before MS. BROWN reached her son, ZACHARY MILLER shoved MS. BROWN and Officer Groom escorted MS. BROWN away from the scene to the area near the front doors of the apartment building.

48.     MS. SANDIDGE followed MS. BROWN to the area near the front doors of the apartment building.

49.     Lacking any lawful reason to do so, SETH REED ordered ZACHARY MILLER to place MS. BROWN and MS. SANDIDGE in handcuffs.

50.     There was no lawful basis for detaining or arresting either MS. BROWN or MS. SANDIDGE at any time.

51.     ZACHARY MILLER grabbed MS. BROWN without announcement or warning and without offering any explanation for his use of force and began pulling MS. BROWN's arms behind her back.

52.     MS. BROWN protested her unlawful detention or arrest, but did not use force against ZACHARY MILLER.

53.     ZACHARY MILLER threw MS. BROWN to the ground in front the apartment building, thereby causing bruises, lacerations and abrasions.

54.     ROBBIN MILLER arrived on scene, ran to the area near the doors to the apartment building, and began to struggle with MS. SANDIDGE in order to detain and handcuff her.

55.     ZACHARY MILLER assisted ROBBIN MILLER in detaining and handcuffing MS. SANDIDGE.

56.     While MS. SANDIDGE was being unlawfully and forcibly detained and handcuffed, her smartphone, still recording, fell to the ground.

57.     ZACHARY MILLER observed that the smart phone was recording and turned off the recording application in order to prevent the unlawful arrest and detention from being recorded.

58.     Due to his position in the parking lot and due to the obstruction of his view by parked cars, SETH REED was unable to see the area near the doors to the apartment building and consequently SETH REED did not observe either ZACHARY MILLER or ROBBIN MILLER interacting with MS. BROWN or MS. SANDIDGE, respectively.

59.     Both MS. BROWN and MS. SANDIDGE were handcuffed in a matter of seconds and both of them were walked to police vehicles.

60.      Terron Pannell was also handcuffed and placed into a patrol car.

61.     MS. BROWN, MS. SANDIDGE and Terron Pannell were transported to the magistrate's office.

62.     A sergeant arrived at the scene and began questioning the LPD officers in an effort to determine how a minor traffic stop had devolved into a near riot.

63.     ZACHARY MILLER initially truthfully reported to the LPD sergeant that he had not been assaulted at all, before changing his story later.

64.     SETH REED reported falsely to the LPD sergeant that both MS. BROWN and MS. SANDIDGE assaulted SETH REED and ZACHARY MILLER in the parking lot while SETH REED held Terron Pannell pinned into the pavement.

65.     SETH REED falsely reported to the LPD sergeant that, upon requesting Terron Pannell to exit the vehicle for a dog sniff, Terron Pannell told SETH REED "I ain't getting out of the

fucking car!" and "don't fucking touch me!"  In reality, Terron Pannell politely told SETH
REED that he was frightened of the police and politely said to SETH REED "please don't touch
me, sir."

66.      SETH REED falsely reported to the LPD sergeant that he witnessed MS. SANDIDGE
assault ROBBIN MILLER near the entrance of the apartment building, when it was impossible
for SETH REED to see MS. SANDIDGE or ROBBIN MILLER from his vantage point in the
parking lot.

67.      SETH REED, ZACHARY MILLER and ROBBIN MILLER responded to the
magistrate's office to obtain arrest warrants against MS. BROWN,  MS. SANDIDGE and Terron
Pannell.

68.      SETH REED , ZACHARY MILLER and ROBBIN MILLER colluded with each other to
fabricate false evidence against MS. BROWN and MS. SANDIDGE before testifying in front of
the magistrate to obtain false charges against each of them.

69.      SETH REED and ZACHARY MILLER each falsely testified to the magistrate that MS.
BROWN had assaulted both SETH REED and ZACHARY MILLER  and that MS. BROWN
had obstructed justice.

70.      ZACHARY MILLER also falsely testified that MS. BROWN assaulted ZACHARY
MILLER and SETH REED before Terron Pannell was handcuffed.

71.      ROBBIN MILLER falsely testified to the magistrate that he had been assaulted by MS.
SANDIDGE.

72.    MS. BROWN was charged with two felony counts of assault and battery of a law-enforcement officer; one alleging assault and battery of ZACHARY MILLER and the other alleging assault and battery of SETH REED.

73.    MS. SANDIDGE was charged with feloniously assaulting ROBBIN MILLER.

74.    MS. BROWN was also charged with a misdemeanor count of obstructing justice.

75.    MS. SANDIDGE was held without bond for six days and she was incarcerated in the Lynchburg Adult Detention Center.

76.    MS. BROWN was released on bond.

77.    Both MS. SANDIDGE and MS. BROWN were forced to endure onerous conditions of bond that restricted their freedom for more than three years until the false charges against them were dismissed.

78.    ZACHARY MILLER falsely gave a statement to an investigator from the Virginia Department of Corrections that caused MS. BROWN to lose her job as a Correctional Officer.

79.    MS. BROWN was forced to live on unemployment benefits after she lost her job, until she found a job as a cashier at a local grocery store.

80.    While the charges were pending against her, MS. BROWN was unable to obtain a job in her profession and she endured onerous conditions of bond that restricted her liberty.

81.    On or about March 10, 2023, the charges against MS. SANDIDGE were dismissed on the prosecution's motion for *nolle prosequi*.[1]

82.    On March 14, 2023, MS. BROWN was acquitted of all three criminal charges by a jury in the Lynchburg Circuit Court.

---

[1]  The court records have been expunged, so the exact date of entry of the order is unknown.

83.    The following specific examples demonstrate the LPD's unconstitutional customs or practices of permitting excessive force:

a.    Upon information and belief on March 29, 2001, Craig Morris was sprayed with pepper spray and then struck several times by officers of the Lynchburg Police Department. The officers were allegedly putting Mr. Morris under arrest for using the term "f_ck", and Mr. Morris did not resist arrest or use any force against the officers, but nevertheless was beaten by said officer of the Lynchburg Police Department;

b.    Upon information and belief on October 18, 2013, Montavious Wells and Tramane Green were injured by officers of the Lynchburg Police Department when they were tased and beaten by officers for allegedly getting smart when asked to identify what high school they went to. Neither Mr. Wells nor Mr. Green threatened the officers, threatened to flee from the officers, or posed a danger to any officers or the public;

c.    Upon information and belief on January 23, 2016, George Brown was injured when officers of the Lynchburg Police Department ordered the police dog to attack Mr. Brown, while Mr. Brown was not resisting arrest or presenting any threat to the officers;

d.    On February 4, 2016, officers of the LPD stopped and tackled Tershaud Rose, who had committed no crime, drove his head into the pavement and held him down while a hospital security guard scarred his back with a Taser, before manufacturing false charges against Rose as a cover-up.

e.   Upon information and belief on February 11, 2016, Brandon Sandifer was injured when officers of the Lynchburg Police Department used excessive force and broke his leg during an arrest at his home for allegedly trespassing;

f.   Upon information and belief on November 28, 2016, Donald Lipford was injured when officers of the Lynchburg Police Department struck him several times and ordered the police dog to attack Mr. Lipford, while he was not resisting arrest or presenting any threat to the officers;

g.   Upon information and belief on November 5, 2017, Pamela Webber was shot and killed by officers of the Lynchburg Police Department, when they were called to her residence on allegations that she was suicidal and had a knife. After barricading herself in her room, Ms. Webber was convinced to come out by officers of the Lynchburg Police Department, and they shot her alleging that she "advanced" on the officer with the knife;

h.   Upon information and belief on February 17, 2018, Walker Sigler was shot by officers of the Lynchburg Police Department, while he was in his home, committing no crime, not presenting a threat to the officers, was unarmed, and not attempting to flee the officers;

i.   On July 18, 2018, LPD officers used a police canine against Larry Booker without justification, thereby causing him injuries.

j.   Upon information and belief on December 12, 2018, Michelle Jefferson was injured by officers of the Lynchburg Police Department while they were serving a warrant on her

at her home. She was grabbed and assaulted by the officers and charged with assault on law enforcement.

k.   Upon information and belief on December 30, 2018, Malik Andrews was shot by officers of the Lynchburg Police Department after officers saw him with a rifle on his shoulder;

l.   Upon information and belief on March 30, 2019, Thyanna Trent was assaulted and injured by officers of the Lynchburg Police Department, while allegedly trespassing while walking toward the exit at the River Ridge Mall in Lynchburg;

m.   Upon information and belief on June 16, 2019, Brian Anderson was injured by officers of the Lynchburg Police Department for allegedly obstructing justice. Mr. Anderson was pulled out of his truck and thrown to the ground, had officers hold him down by knees, while other officers yanked his arms, causing injury to his shoulders;

n.   Upon information and belief on July 3, 2019, Mario Jackson was injured by an officer of the Lynchburg Police Department after he was stopped for an alleged "window tint violation." After having Mr. Jackson exit his vehicle the officers grabbed him and slammed him against the car, threw him to the ground, then beat him while he begged the officers to stop.

o.   Upon information and belief on March 7, 2020, Aniyah Hicks was injured by officers of the Lynchburg Police Department, requiring her to receive seven stitches to close a gash above her eye, when she was assaulted, thrown to the ground, then had her face mashed to the ground by Officer Godsie, while she was presenting no danger to any

officer or the public, was not attempting to flee, and was breaking no law, other than being present at a fight;

84.     It is obvious that LPD has failed to properly train its officers in the use of force because of the pattern demonstrated by the multitude of instances in which officers have used force in violation of policy.

85.     Upon information and belief, the uses of force against MS. BROWN and MS. SANDIDGE were reported and investigated by the Lynchburg Police Department, but none of the officers involved were disciplined or counseled  These investigations were conducted by the Chief of the Lynchburg Police Department, who has the final policymaking authority with regard to use of force.  Thus, the City of Lynchburg ratified the unconstitutional customs and practices of its officers.

86.     MS. BROWN suffered physical, mental and emotional damages as result of the unlawful and unconstitutional conduct of SETH REED, ZACHARY MILLER and the CITY OF LYNCHBURG described above, including abrasions, contusions, pain, humiliation, fear, loss of liberty, anxiety, loss of sleep and extreme emotional distress.

87.     MS. SANDIDGE suffered physical, mental and emotional damages as a result of the unlawful and unconstitutional conduct of SETH REED, ZACHARY MILLER, ROBBIN MILLER and the CITY OF LYNCHBURG described above, including abrasions, contusions, pain, humiliation, fear, loss of liberty, anxiety, loss of sleep and extreme emotional distress.

## COUNT ONE

### VIOLATION OF CIVIL RIGHTS: EXCESSIVE FORCE AGAINST SHANTA BROWN BY DEFENDANTS SETH REED AND ZACHARY MILLER

### (42 U.S.C. §1983 - 4th and 14th Amendments)

88.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

89.    As there was never probable cause to seize, detain or arrest MS. BROWN, the use of any force against her by SETH REED or ZACHARY MILLER was objectively unreasonable and unlawful.

90.    As there was never any reasonable and articulable suspicion to believe that any criminal activity was afoot, there was no lawful authority at any time to seize, detain or arrest MS. BROWN and so the use of any force against her by SETH REED or ZACHARY MILLER was objectively unreasonable and unlawful.

91.    The use of physical force by ZACHARY MILLER, acting jointly with, and under the command and instruction of SETH REED, was unnecessary, excessive and unreasonable even if there had been probable cause to seize MS. BROWN.

92.    Instead of verbally instructing MS. BROWN to comply, ZACHARY MILLER grabbed her, without notice and from behind, and threw her to the ground, thereby causing her physical and emotional injuries.

93.    SETH REED and ZACHARY MILLER acted with conscious disregard to MS. BROWN'S constitutional right to liberty when, acting jointly, they used force against her.

94.    SETH REED and ZACHARY MILLER acted with actual malice when they used force against MS. BROWN.

95.     The use of excessive and objectively unreasonable force upon MS. BROWN by SETH

REED and ZACHARY MILLER, acting jointly, violated MS. BROWN'S rights under the

Fourth and the Fourteenth Amendments to the United States Constitution.

96.     The use of excessive and objectively unreasonable force upon MS. BROWN by SETH

REED and ZACHARY MILLER, acting jointly, was a direct and proximate cause of MS.

BROWN'S injuries.

## COUNT TWO

### VIOLATION OF CIVIL RIGHTS: EXCESSIVE FORCE AGAINST AQUASHA SANDIDGE BY DEFENDANTS SETH REED, ZACHARY MILLER AND ROBBIN MILLER

### (42 U.S.C. §1983 - 4th and 14th Amendments)

97.     All previous paragraphs of this Complaint are incorporated herein by reference and are

re-alleged as if restated.

98.     The right to be free from the application of excessive and unlawful force is guaranteed by

the Fourth and Fourteenth Amendments to the United States Constitution.

99.     As there was never probable cause to seize, detain or arrest MS. SANDIDGE, the use of

any force against her by SETH REED,  ZACHARY MILLER or ROBBIN MILLER was

objectively unreasonable and unlawful.

100.    As there was never any reasonable and articulable suspicion to believe that any criminal

activity was afoot, there was no lawful authority at any time to seize, detain or arrest MS.

SANDIDGE and so the use of any force against her by SETH REED,  ZACHARY MILLER or

ROBBIN MILLER was objectively unreasonable and unlawful.

101.    The use of physical force by ZACHARY MILLER and ROBBIN MILLER, acting jointly with, and under the command, instruction, instigation or suggestion of SETH REED, was unnecessary, excessive and unreasonable even if there had been probable cause to seize MS. SANDIDGE.

102.    Instead of verbally instructing MS. SANDIDGE to comply, ROBBIN MILLER grabbed her without notice from behind and threw her to the ground, thereby causing her physical and emotional injuries.

103.    ZACHARY MILLER assisted in taking MS. SANDIDGE to the ground.

104.    SETH REED, ZACHARY MILLER and ROBBIN MILLER acted with conscious disregard to MS. SANDIDGE'S constitutional right to liberty when, acting jointly, they used force against her.

105.    SETH REED, ZACHARY MILLER and ROBBIN MILLER acted with actual malice when they used force against MS. SANDIDGE.

106.    The use of excessive and objectively unreasonable force upon MS. SANDIDGE by SETH REED and ZACHARY MILLER, acting jointly, violated MS. SANDIDGE'S rights under the Fourth and the Fourteenth Amendments to the United States Constitution.

107.    The use of excessive and objectively unreasonable force upon MS. SANDIDGE by SETH REED and ZACHARY MILLER, acting jointly, was a direct and proximate cause of MS. SANDIDGE'S injuries.

## COUNT THREE

**VIOLATION OF CIVIL RIGHTS:  UNLAWFUL SEIZURE OF SHANTA BROWN BY DEFENDANTS SETH REED AND ZACHARY MILLER**

**(42 U.S.C. §1983 - 4th and 14th Amendments)**

108.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

109.    The Fourth and Fourteenth Amendments to the United States Constitution guarantee the right to be free from unreasonable seizure.

110.    At no time pertinent to this complaint, did any warrant authorize the seizure of MS. BROWN.

111.    No probable cause existed at any time pertinent to this Complaint, to justify the seizure of MS. BROWN.

112.    No reasonable and articulable suspicion existed at any time pertinent to this Complaint to believe that criminal activity was afoot once Terron Pannell was removed from the vehicle.

113.    MS. BROWN did not consent to being seized by SETH REED or ZACHARY MILLER.

114.    SETH REED and ZACHARY MILLER violated MS. BROWN'S Fourth and Fourteenth Amendment rights to be free from unlawful seizure when they seized her as described above.

115.    SETH REED and ZACHARY MILLER acted with conscious disregard of MS. BROWN'S rights when they unlawfully seized her.

116.    SETH REED and ZACHARY MILLER acted with actual malice when they unlawfully seized MS. BROWN.

117.    The unlawful seizure of MS. BROWN by SETH REED and ZACHARY MILLER was a direct and proximate cause of MS. BROWN'S injuries.

## COUNT FOUR

**VIOLATION OF CIVIL RIGHTS:  UNLAWFUL SEIZURE OF AQUASHA SANDIDGE BY DEFENDANTS SETH REED,  ZACHARY MILLER AND ROBBIN MILLER**

**(42 U.S.C. §1983 - 4th and 14th Amendments)**

118.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

119.    The Fourth and Fourteenth Amendments to the United States Constitution guarantee the right to be free from unreasonable seizure.

120.    At no time pertinent to this complaint, did any warrant authorize the seizure of MS. SANDIDGE.

121.    No probable cause existed at any time pertinent to this Complaint, to justify the seizure of MS. SANDIDGE.

122.    No reasonable and articulable suspicion existed at any time pertinent to this Complaint to believe that criminal activity was afoot once Terron Pannell was removed from the vehicle.

123.    MS. SANDIDGE did not consent to being seized by SETH REED, ZACHARY MILLER or ROBBIN MILLER.

124.    SETH REED, ZACHARY MILLER and ROBBIN MILLER violated MS. SANDIDGE'S Fourth and Fourteenth Amendment rights to be free from unlawful seizure when they seized as described above.

125.    SETH REED, ZACHARY MILLER and ROBBIN MILLER acted with conscious disregard of MS. SANDIDGE'S rights when they unlawfully seized her.

126.    SETH REED,  ZACHARY MILLER and ROBBIN MILLER acted with actual malice when they unlawfully seized MS. SANDIDGE.

127.    The unlawful seizure of MS. SANDIDGE by SETH REED, ZACHARY MILLER and ROBIN MILLER was a direct and proximate cause of MS. SANDIDGE'S injuries.

## COUNT FIVE

### VIOLATION OF CIVIL RIGHTS: MALICIOUS PROSECUTION OF SHANTA BROWN BY DEFENDANTS SETH REED AND ZACHARY MILLER

### (42 U.S.C. §1985 – 4th, 5th and 14th Amendments)

128.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

129.    SETH REED and ZACHARY MILLER conspired and colluded as previously described to create false evidence against MS. BROWN.

130.    SETH REED and ZACHARY MILLER maliciously gave false testimony to the magistrate in order to secure arrest warrants against MS. BROWN.

131.    SETH REED and ZACHARY  MILLER continued their malicious prosecution of MS. BROWN for three years.  This malicious prosecution ended only when their lies were exposed to the jury that acquitted MS. BROWN.

132.    The malicious prosecution of MS. BROWN by SETH REED and ZACHARY MILLER was a direct and proximate cause of MS. BROWN'S injuries.

133.    SETH REED and ZACHARY MILLER acted with conscious disregard of MS. BROWN'S right to be free from unlawful seizure under the Fourth Amendment to the United States Constitution when they maliciously prosecuted her as previously described.

134.    SETH REED and ZACHARY MILLER acted with conscious disregard of MS. BROWN'S due process rights under the Fifth and Fourteenth Amendments to the United States Constitution when they maliciously prosecuted her as previously described.

135.   SETH REED and ZACHARY MILLER acted with actual malice when they prosecuted MS. BROWN as previously described.

136.   In addition to injuries previously described, MS. BROWN incurred substantial legal expenses in defending herself against the malicious prosecution.

137.   The malicious prosecution of MS. BROWN by SETH REED and ZACHARY MILLER was terminated in MS. BROWN'S favor by her acquittal.

<u>COUNT SIX</u>

**VIOLATION OF CIVIL RIGHTS: MALICIOUS PROSECUTION OF AQUASHA SANDIDGE BY DEFENDANTS SETH REED, ZACHARY MILLER AND ROBBIN MILLER**

**(42 U.S.C. §1985 – 4th, 5th and 14th Amendments)**

138.   All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

139.   SETH REED, ZACHARY MILLER and ROBBIN MILLER conspired and colluded as previously described to create false evidence against MS. SANDIDGE.

140.   SETH REED, ZACHARY MILLER and ROBBIN MILLER maliciously gave false testimony to the magistrate in order to secure arrest warrants against MS. SANDIDGE.

141.   SETH REED, ZACHARY  MILLER and ROBBIN MILLER continued their malicious prosecution of MS. SANDIDGE for three years.  This malicious prosecution ended only when the case was dismissed after the Commonwealth of Virginia moved to *nolle prossequi* the case shortly before SHANTA BROWN was acquitted by a jury.

142.   The malicious prosecution MS. BROWN by SETH REED, ZACHARY MILLER and ROBBIN MILLER was a direct and proximate cause of MS. SANDIDGE'S injuries.

143.    SETH REED, ZACHARY MILLER and ROBBIN MILLER acted with conscious disregard of MS. SANDIDGE'S right to be free from unlawful seizure under the Fourth Amendment to the United States Constitution when they maliciously prosecuted her as previously described.

144.    SETH REED , ZACHARY MILLER and ROBBIN MILLER acted with conscious disregard of MS. SANDIDGE'S due process rights under the Fifth and Fourteenth Amendments to the United States Constitution when they maliciously prosecuted her as previously described.

145.    SETH REED, ZACHARY MILLER and ROBBIN MILLER acted with actual malice when they maliciously prosecuted MS. SANDIDGE as previously described.

146.    The malicious prosecution of MS. SANDIDGE by SETH REED, ZACHARY MILLER and ROBBIN MILLER was terminated in MS. SANDIDGE'S favor by dismissal after the Commonwealth's motion for *nolle prossequi*.

## COUNT SEVEN

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – UNCONSTITUTIONAL CUSTOM OR PRACTICE -   EXCESSIVE FORCE AGAINST SHANTA BROWN**

**(42 U.S.C. §1983 - 4th and 14thAmendments)**

147.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

148.    The CITY OF LYNCHBURG maintains facially constitutional written polices and directives regarding the use of force by LPD officers.

149.    The Chief of the Lynchburg Police Department is final policymaker with regard to implementation and enforcement of the LPD's use of of force policies.

150.     Notwithstanding its facially constitutional polices, the CITY OF LYNCHBURG maintains unconstitutional customs and practices regarding use of force by LPD officers that depart from and violate the facially constitutional written policies.

151.     The unconstitutional customs and practices of the LPD are demonstrated by the pattern illustrated by the many examples of the unconstitutional use of unreasonable and excessive force by LPD officers previously described.

152.     The unconstitutional custom or practice of the CITY OF LYNCHBURG that permits LPD officers to use unreasonable and excessive force was a driving force behind the injuries MS. BROWN suffered.

153.     The unconstitutional custom or practice of the CITY OF LYNCHBURG that permits LPD officers to use unreasonable and excessive force was a direct and proximate cause of the injuries MS. BROWN suffered.

## COUNT EIGHT

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – UNCONSTITUTIONAL CUSTOM OR PRACTICE -   EXCESSIVE FORCE AGAINST AQUASHA SANDIDGE**

**(42 U.S.C. §1983 - 4th and 14thAmendments)**

154.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

155.     The CITY OF LYNCHBURG maintains facially constitutional written polices and directives regarding the use of force by LPD officers.

156.     The Chief of the Lynchburg Police Department is final policymaker with regard to implementation and enforcement of the LPD's use of of force policies.

157.    Notwithstanding its facially constitutional polices, the CITY OF LYNCHBURG maintains unconstitutional customs and practices regarding use of force by LPD officers that depart from and violate the facially constitutional written policies.

158.    The unconstitutional customs and practices of the LPD are demonstrated by the pattern illustrated by the many examples of the unconstitutional use of unreasonable and excessive force by LPD officers previously described.

159.    The unconstitutional custom or practice of the CITY OF LYNCHBURG that permits LPD officers to use unreasonable and excessive force was a driving force behind the injuries MS. SANDIDGE suffered.

160.    The unconstitutional custom or practice of the CITY OF LYNCHBURG that permits LPD officers to use unreasonable and excessive force was a direct and proximate cause of the injuries MS. SANDIDGE suffered.

## COUNT NINE

## MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – FAILURE TO TRAIN LPD OFFICERS IN USE OF FORCE AGAINST SHANTA BROWN

### (42 U.S.C. §1983 - 4th and 14th Amendments)

161.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

162.    The need by the CITY OF LYNCHBURG to train its police officers in the constitutional limits of the use of force is obvious.

163.    The lack of training of LPD officers in the constitutional limits of the use of force is also obvious, as evidence by the examples of the unconstitutional use of force by LPD officers previously provided.

164.    The lack of training of LPD officers in the constitutional limits of the use of force was a moving force behind the injuries MS. BROWN suffered.

165.    The lack of training of LPD officers in the constitutional limits of the use of force was a direct and proximate cause of MS. BROWN'S injuries.

## COUNT TEN

### MUNICIPAL LIABILITY OF CITY OF LYNCHBURG TO AQUASHA SANDIDGE FOR FAILURE TO TRAIN LPD OFFICERS IN USE OF FORCE

### (42 U.S.C. §1983 - 4th and 14th Amendments)

166.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

167.    The need by the CITY OF LYNCHBURG to train its police officers in the constitutional limits of the use of force is obvious.

168.    The lack of training of LPD officers in the constitutional limits of the use of force is also obvious, as evidence by the examples of the unconstitutional use of force by LPD officers previously provided.

169.    The lack of training of LPD officers in the constitutional limits of the use of force was a moving force behind the injuries MS. SANDIDGE suffered.

170.    The lack of training of LPD officers in the constitutional limits of the use of force was a direct and proximate cause of MS. SANDIDGE'S injuries.

## COUNT ELEVEN

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG TO SHANTA BROWN FOR ITS FAILURE TO DISCIPLINE LPD OFFICERS FOR VIOLATING HER CONSTITUTIONAL RIGHTS**

**(42 U.S.C. §1983 - 4th and 14th Amendments – *Monell* Claim)**

171.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

172.     In conversations recorded on bodycam video, SETH REED and ZACHARY MILLER can be heard fabricating false evidence against MS. BROWN.

173.     The bodycam video was available for use during the investigation of the use of force by SETH REED and ZACHARY MILLER.

174.     The LPD investigated the conduct of SETH REED and ZACHARY MILLER after they used force against MS. BROWN.

175.     The LPD did not discipline SETH REED or ZACHARY MILLER for their gross and obvious misconduct.

176.     This incident is typical of a pattern, practice or custom in the LPD of failing to discipline its officers for unconstitutional, excessive and unreasonable use of force as noted by the examples previously provided.

177.     The Chief of the Lynchburg Police Department is the ultimate policymaker and decision maker with regard to discipline of LPD officers accused of violating the constitutional rights of others.

178.    The Chief of the Lynchburg Police Department has, and had, at all times pertinent to this Complaint, actual or constructive knowledge of the custom or practice that prevents LPD officers from being disciplined for violating the constitutional rights of others.

179.    The pattern, practice or custom of the CITY OF LYNCHBURG in failing to discipline LPD officers for their unconstitutional, unreasonable and excessive uses of force was a moving force behind MS. BROWN'S injuries.

180.    The pattern, practice or custom of the CITY OF LYNCHBURG in failing to discipline LPD officers for their unconstitutional, unreasonable and excessive uses of force was a direct and proximate cause of MS. BROWN'S injuries.

### COUNT  TWELVE

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG TO AQUASHA SANDIDGE FOR ITS FAILURE TO DISCIPLINE LPD OFFICERS  FOR VIOLATING HER CONSTITUTIONAL RIGHTS**

**(42 U.S.C. §1983 - 4th and 14th Amendments – *Monell* Claim)**

181.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

182.    In conversations recorded on bodycam video, SETH REED, ZACHARY MILLER and ROBBIN MILLER can be heard fabricating false evidence against MS. SANDIDGE.

183.    The bodycam video was available for use during the investigation of the use of force by SETH REED, ZACHARY MILLER and ROBBIN MILLER.

184.    The LPD investigated the conduct of SETH REED, ZACHARY MILLER and ROBBIN MILLER after they used force against MS. SANDIDGE.

185.    The LPD did not discipline SETH REED, ZACHARY MILLERor ROBBIN MILLER

for their gross and obvious misconduct.

186.    This incident is typical of a pattern, practice or custom in the LPD of failing to discipline

its officers for unconstitutional, excessive and unreasonable use of force as noted by the

examples previously provided.

187.    The Chief of the Lynchburg Police Department is the ultimate policymaker and decision

maker with regard to discipline of LPD officers accused of violating the constitutional rights of

others.

188.    The Chief of the Lynchburg Police Department has, and had, at all times pertinent to this

Complaint, actual or constructive knowledge of the custom or practice that prevents LPD officers

from being disciplined for violating the constitutional rights of others.

189.    The pattern, practice or custom of the CITY OF LYNCHBURG in failing to discipline

LPD officers for their unconstitutional, unreasonable and excessive uses of force was a moving

force behind MS. SANDIDGE'S injuries.

190.    The pattern, practice or custom of the CITY OF LYNCHBURG in failing to discipline

LPD officers for their unconstitutional, unreasonable and excessive uses of force was a direct

and proximate cause of MS. SANDIDGE'S injuries.

## COUNT THIRTEEN

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG - RATIFICATION OF USE
OF UNCONSTITUTIONAL EXCESSIVE FORCE AGAINST SHANTA BROWN**

**(42 U.S.C. §1983 - 4th and 14th Amendments – *Monell* Claim)**

191.    All previous paragraphs of this Complaint are incorporated herein by reference and are

re-alleged as if restated.

192.     The LPD conducted a review or investigation of the use of force against MS. BROWN.

193.     The Chief of the Lynchburg Police Department was, and remains, at all times pertinent to this Complaint, the final policymaker and decision maker with regard to the conduct and disposition of reviews and investigations into the use of force by LPD officers.

194.     The Chief of the Lynchburg Police Department had actual or constructive knowledge of the review or investigation of the use of force against MS. BROWN by LPD officers.

195.     The review or investigation of the use of force against MS. BROWN by LPD officers concluded that the officers had not violated the law or LPD policies.

196.     Thus, the Chief of the Lynchburg Police Department ratified the unconstitutional and excessive use of force against MS. BROWN by SETH REED and ZACHARY MILLER.

197.     In ratifying the unconstitutional and excessive use of force against MS. BROWN by SETH REED and ZACHARY MILLER, the Chief of the Lynchburg Police Department created an unwritten policy of condoning such unconstitutional and unlawful conduct.

198.     The ratification by the CITY OF LYNCHBURG, by and through the Chief of the Lynchburg Police Department, acting as the final policymaker and decision maker on behalf of the CITY OF LYNCHBURG, of the unconstitutional and excessive use of force against MS. BROWN by SETH REED and ZACHARY MILLER, was a moving force behind MS. BROWN'S injuries.

199.     The ratification by the CITY OF LYNCHBURG, by and through the Chief of the Lynchburg Police Department, acting as the final policymaker and decision maker on behalf of the CITY OF LYNCHBURG, of the unconstitutional and excessive use of force against MS.

BROWN by SETH REED and ZACHARY MILLER, was a direct and proximate cause of MS.

BROWN'S injuries.

## COUNT FOURTEEN

### MUNICIPAL LIABILITY OF CITY OF LYNCHBURG - RATIFICATION OF USE OF UNCONSTITUTIONAL EXCESSIVE FORCE AGAINST AQUASHA SANDIDGE

### (42 U.S.C. §1983 - 4th and 14th Amendments – *Monell* Claim)

200.    All previous paragraphs of this Complaint are incorporated herein by reference and are

re-alleged as if restated.

201.    The LPD conducted a review or investigation of the use of force against MS. BROWN.

202.    The Chief of the Lynchburg Police Department was, and remains, at all times pertinent to

this Complaint, the final policymaker and decision maker with regard to the conduct and

disposition of reviews and investigations into the use of force by LPD officers.

203.    The Chief of the Lynchburg Police Department had actual or constructive knowledge of

the review or investigation of the use of force against MS. SANDIDGE by LPD officers.

204.    The review or investigation of the use of force against MS. SANDIDGE by LPD officers

concluded that the officers had not violated the law or LPD policies.

205.    Thus, the Chief of the Lynchburg Police Department ratified the unconstitutional and

excessive use of force against MS. SANDIDGE by SETH REED,  ZACHARY MILLER and

ROBBIN MILLER.

206.    In ratifying the unconstitutional and excessive use of force against MS. SANDIDGE by

SETH REED, ZACHARY MILLER and ROBBIN MILLER, the Chief of the Lynchburg Police

Department created an unwritten policy of condoning such unconstitutional and unlawful conduct.

207.    The ratification by the CITY OF LYNCHBURG, by and through the Chief of the Lynchburg Police Department, acting as the final policymaker and decision maker on behalf of the CITY OF LYNCHBURG, of the unconstitutional and excessive use of force against MS. SANDIDGE by SETH REED, ZACHARY MILLER and ROBBIN MILLER, was a moving force behind MS. SANDIDGE'S injuries.

208.    The ratification by the CITY OF LYNCHBURG, by and through the Chief of the Lynchburg Police Department, acting as the final policymaker and decision maker on behalf of the CITY OF LYNCHBURG, of the unconstitutional and excessive use of force against MS. SANDIDGE by SETH REED, ZACHARY MILLER and ROBBIN MILLER, was a direct and proximate cause of MS. SANDIDGE'S injuries.

## COUNT FIFTEEN

### CIVIL ASSAULT AND BATTERY OF SHANTA BROWN BY SETH REED AND ZACHARY MILLER

### (Virginia Common Law Claim)

209.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

210.    On April 28, 2020, ZACHARY MILLER, acting jointly with and at the command and behest of SETH REED, without justification, excuse or consent, touched MS. BROWN in an offensive manner that that caused her pain, fear and intimidation when he accosted MS. BROWN and took her to the ground, detained her and otherwise restrained her liberty by the use of physical force applied to her body as previously described.

211.    ZACHARY MILLER and SETH REED acted with actual malice against MS. BROWN when they assaulted and battered her as described above.

212.    The above-described assault and battery was a direct and proximate cause of MS. BROWN'S injuries.

213.    MS. BROWN is entitled to recover compensatory and punitive damages from SETH REED and ZACHARY MILLER for the damages she sustained as a result of assault and battery.

**COUNT SIXTEEN**

**CIVIL ASSAULT AND BATTERY OF AQUASHA SANDIDGE BY SETH REED, ZACHARY MILLER AND ROBBIN MILLER**

**(Virginia Common Law Claim)**

214.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

215.    On April 28, 2020, ZACHARY MILLER and ROBBIN MILLER, acting jointly with and at the command and behest of SETH REED, without justification, excuse or consent, touched MS. SANDIDGE in an offensive manner that that caused her pain, fear and intimidation when they accosted MS. SANDIDGE and took her to the ground, detained her and otherwise restrained her liberty by the use of physical force applied to her body as previously described.

216.    SETH REED, ZACHARY MILLER and ROBBIN MILLER acted with actual malice against MS. SANDIDGE when they assaulted and battered her as described above.

217.    The above-described assault and battery was a direct and proximate cause of MS. SANDIDGE'S injuries.

218.   MS. SANDIDGE is entitled to recover compensatory and punitive damages from SETH REED, ZACHARY MILLER and ROBBIN MILLER for the damages she sustained as result of assault and battery.

## COUNT SEVENTEEN

### FALSE IMPRISONMENT OF SHANTA BROWN BY SETH REED AND ZACHARY MILLER

### (Virginia Common Law Claim)

219.   All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

220.   SETH REED and ZACHARY MILLER, acting jointly and intentionally and without legal authority, unlawfully restrained MS. BROWN and deprived her of liberty when they detained her and arrested her without probable cause on April 28, 2020 as previously described.

221.   The above-described false imprisonment was a direct and proximate cause of MS. BROWN'S previously described injuries.

222.   MS. BROWN is entitled to recover compensatory and punitive damages from SETH REED and ZACHARY BROWN for false imprisonment.

## COUNT EIGHTEEN

### FALSE IMPRISONMENT OF AQUASHA SANDIDGE BY SETH REED, ZACHARY MILLER AND ROBBIN MILLER

### (Virginia Common Law Claim)

223.   All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

224.    SETH REED, ZACHARY MILLER and ROBBIN MILLER, acting jointly and intentionally and without legal authority, unlawfully restrained MS. SANDIDGE and deprived her of liberty when they detained her and arrested her without probable cause on April 28, 2020 as previously described.

225.    The above-described false imprisonment was a direct and proximate cause of MS. SANDIDGE'S previously described injuries.

226.    MS. BROWN is entitled to recover compensatory and punitive damages from SETH REED, ZACHARY BROWN and ROBBIN MILLER for false imprisonment.

## COUNT NINETEEN

### MALICIOUS PROSECUTION OF SHANTA BROWN BY SETH REED AND ZACHARY MILLER

### (Virginia Common Law Claim)

227.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

228.    SETH REED and ZACHARY MILLER acted with actual malice when they instituted the prosecution of MS. BROWN on April 28, 2020 as previously described.

229.    MS. BROWN'S prosecution on each of the false charges taken out against her on April 28, 2020 was instituted by, or with the cooperation of, SETH REED and ZACHARY MILLER.

230.    SETH REED and ZACHARY MILLER lacked probable cause to arrest or prosecute MS. BROWN on April 28, 2020 and at any time thereafter.

231.    The prosecution of MS. BROWN by SETH REED and ZACHARY MILLER was terminated in a manner favorable to MS. BROWN when she was acquitted of all charges by a jury.

232.    The malicious prosecution of MS. BROWN by SETH REED and ZACHARY MILLER

was a direct and proximate cause of MS. BROWN'S injures as previously described.

233.    MS. BROWN is entitled to recover compensatory and punitive damages from SETH

REED and ZACHARY MILLER for their malicious prosecution of her.

## COUNT TWENTY

### FALSE IMPRISONMENT OF AQUASHA SANDIDGE BY SETH REED, ZACHARY MILLER AND ROBBIN MILLER

### (Virginia Common Law Claim)

234.    All previous paragraphs of this Complaint are incorporated herein by reference and are

re-alleged as if restated.

235.    SETH REED, ZACHARY MILLER and ROBBIN MILLER acted with actual malice

when they instituted the prosecution of MS. SANDIDGE on April 28, 2020 as previously

described.

236.    MS. SANDIDGE'S prosecution on each of the false charges taken out against her on

April 28, 2020 was instituted by, or with the cooperation of, SETH REED, ZACHARY MILLER

and ROBBIN MILLER.

237.    SETH REED, ZACHARY MILLER and ROBBIN MILLER lacked probable cause to

arrest or prosecute MS. SANDIDGE on April 28, 2020 and at any time thereafter.

238.    The prosecution of MS. SANDIDGE by SETH REED, ZACHARY MILLER and

ROBBIN MILLER was terminated in a manner favorable to MS. SANDIDGE when she was

acquitted of all charges by a jury.

239.     The malicious prosecution of MS. SANDIDGE by SETH REED, ZACHARY MILLER

and ROBBIN MILLER was a direct and proximate cause of MS. SANDIDGE'S injures as

previously described.

240.     MS. SANDIDGE is entitled to recover compensatory and punitive damages from SETH

REED, ZACHARY MILLER and ROBBIN MILLER for their malicious prosecution of her.

### PRAYER FOR RELIEF

AND NOTHING FURTHER REMAINING, Plaintiffs, SHANTA BROWN and

AQUASHA SANDIDGE, request that this Court grant them the following relief:

(a)     Judgment against each of the defendants, jointly and severally, and in favor of

SHANTA BROWN, in the amount of TEN MILLION DOLLARS ($10,000,000.00) and such

additional damages as may be proven at trial;

(b)     Judgment against each of the defendants, jointly and severally, and in favor of

AQUASHA SANDIDGE, in the amount of TEN MILLION DOLLARS ($10,000,000.00) and

such additional damages as may be proven at trial;

(b)     Punitive damages to SHANTA BROWN from each of SETH REED and

ZACHARY MILLER in such amount as proven at trial;

(c)     Punitive damages to AQUASHA SANDIDGE from each of SETH REED,

ZACHARY MILLER and ROBBIN MILLER in such amount as proven at trial;

(c)     Costs and expenses, including reasonable attorney's fees;

(d)     Injunctive relief to prevent further unlawful conduct;

(e)     All such other legal and equitable relief as the Court deems appropriate.

### A JURY TRIAL IS DEMANDED

Respectfully Submitted,

**SHANTA BROWN and AQUASHA SANDIDGE**
**By Counsel**

**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**

**By: /s/ M. Paul Valois**
    **M. Paul Valois, Esquire**
    **Counsel for Plaintiff**
    **Virginia State Bar No. 72326**
    **mvalois@vbclegal.com**