IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **SHANTA LYNETTE BROWN,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **AQUASHA SANDIDGE,** | ) |
|     *Plaintiffs* | ) |
| | ) |
| v. | )    CASE NO.  6:23cv00054 |
| | ) |
| **CITY OF LYNCHBURG, et. al.,** | ) |
|     *Defendants.* | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

COMES NOW the Plaintiff, by counsel, in opposition to the Rule 12(b)(6) motion (ECF 8) filed by Defendant City of Lynchburg, to-wit:

**NONE OF THE PLAINTIFFS' CLAIMS ARE TIME BARRED**

**(All Counts)**

None of the Plaintiff's claims are barred by any statutory period of limitation because both of the Plaintiffs were criminally prosecuted for charges that arose from the same set of facts alleged in the complaint.  The Code of Virginia provides for tolling of the period of limitations in personal actions for damages when a criminal prosecution arises from the same set of facts.[1] The arrest warrants were taken out against each of the Plaintiffs on April 28, 2020 and the

---

[1] Va. Code § 8.01-229(K) provides:  "Suspension of limitations during criminal proceedings. -- In any personal action for damages, if a criminal prosecution arising out of the same facts is commenced, the time such prosecution is pending shall not be computed as part of the period within which such a civil action may be brought. For purposes of this subsection, the time during which a prosecution is pending shall be calculated from the date of the issuance of a warrant, summons or capias, the return or filing of an indictment or information, or the defendant's first appearance in any court as an accused in such a prosecution, whichever date occurs first, until the date of the final judgment or order in the trial court, the date of the final disposition of any direct appeal in state court, or the date on which the time for noting an appeal has expired, whichever date occurs last. Thereafter, the civil action may be brought within the remaining period of the statute or within one year, whichever is longer."

prosecution of each of Plaintiffs continued without interruption until all charges were dismissed against each of them in March, 2023.  Thus, the two-year period of limitations that pertains to the Plaintiff's personal claims did not even begin to run until March, 2023 and so all of their claims were timely filed.  See, e.g, *Pinder v. Knorowski*, 660 F.Supp.2d 726 (E.D. Va. 2009) and *Booth v. Higgins*, Case No.. 7:19-CV-00429 (W.D. Va. Jul 21, 2020) discussing  the effect of Va. Code § 8.01-229(K) on the tolling of the period of limitations during criminal prosecutions.

## THE PLAINTIFFS ALLEGED PLAUSIBLE *MONELL* LIABILITY FOR UNCONSTITUTIONAL POLICIES AND FAILURE TO TRAIN

## (Counts 7, 8, 9 and 10)

The Plaintiff's have alleged facts sufficient to state plausible *Monell* claims because they have provided specific instances of past constitutional violations that will establish, if proven, the pattern necessary to underlie a *Monell* claim.  Of course, alleging any claim is much easier than proving one, but at this early stage, the Complaint does not merely relate a threadbare list of conclusory allegations, but it instead provides an extensive list of examples of specific acts of alleged unconstitutional conduct.  These factual allegations are meaty enough to withstand the 12(b)(6) standard of plausibility.

## THE PLAINTIFFS ALLEGED A PLAUSIBLE RATIFICATION THEORY OF *MONELL* LIABILITY AND FACTS SUFFICIENT TO SUSTAIN A FAILURE TO DISCIPLINE *MONELL* CLAIM

## (Counts 11. 12. 13 and 14)

The Defendants misread *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*  28 F.4th 529 (4th Cir. 2022)  The plaintiff in *Starbuck* (a student who alleged that the he was unlawfully suspended in violation of the First Amendment) asserted that the defendant school board (deemed to be a municipality for purposes of Section 1983 litigation) ratified an unconstitutional suspension imposed by an administrator.   The school board argued, as the Defendants in the

instant case now do, that actions of the school board taken after the alleged unconstitutional suspension could not have been a "moving force" behind the suspension. The Fourth Circuit flatly rejected that argument:

> The School Board's third argument, that its act ratifying Starbuck's suspension does not constitute "the moving force" behind the constitutional violation, fares no better. Br. of Appellee at 14. Starbuck has sufficiently alleged that the School Board's approval was in fact the "moving force" behind the constitutional violation. *Riddick*, 238 F.3d at 524 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ). **Contrary to the School Board's argument, being the "moving force" does not necessitate that a plaintiff allege that the Board have knowledge of, or involvement in, the alleged constitutional violation from the outset.** *See* Br. of Appellee at 14–15. Of course, sometimes officials with final policymaking authority participate in the initial constitutional violation perpetrated by subordinates. *See, e.g., Pembaur*, 475 U.S. at 473, 106 S.Ct. 1292 ; *Hall*, 31 F.3d at 196. **But the entire concept of ratification liability presupposes that the initial complained-of conduct precedes involvement by the final policymaking authority. Accordingly, neither the Supreme Court nor this Court has ever held that initial involvement is required to hold officials with final policymaking authority liable as the "moving force" for ratification of the decisions of subordinates**. *Starbuck, supra* (emphasis added)

A question that arose in *Starbuck* (that has no bearing in the instant case, but that is implied in the Defendants' argument) was the effect of the defendant school board's power to overturn a student's suspension upon the municipality's *Monell* liability under a ratification theory. The school board argued that since it had the power and discretion to approve or to disapprove the student's suspension, it did not simply ratify the decision of a subordinate, but instead acted independently in its role as the final policy maker to effect the suspension. The Fourth Circuit made short work of this false logic:

> … [T]he School Board argues that Starbuck cannot rely on the Board's ratification of subordinate officials' conduct to hold the Board liable here because the Board "did not simply 'ratify' the actions of the school employees who suspended" him, rather the School Board's decision to approve the suspension "was the independent act of a policymaker." Br. of Appellee at 13. **This argument gains the Board nothing because just as ratification of subordinate officials' actions is one means of holding a final policymaker liable under** *Monell***, the**

> **independent act of the final policymaker provides another**. *See Hall*, 31 F.3d at 196 (holding that the Board's ratification of a subordinate's unconstitutional actions as well as its own independent decision to fire Hall were both reasons "the District [could] be held liable for the act of the Board in dismissing Hall."). If, as the School Board seems to contend, the Board did not ratify the subordinate school officials' conduct but acted independently, then this independent act was still that of the final policymaking authority. **Whether it ratified the suspension or independently imposed it, the Board's act was sufficient to hold the School Board liable for constitutional violations resulting from that act.** *Starbuck, supra* (emphasis added)

Properly understood, ratification does not hinge on the power to "undo" an unconstitutional act, but instead simply evinces an unconstitutional policy or custom that is recognized or created by the final policymaker upon review and ratification of an unconstitutional act of a subordinate. For example, if a municipality maintains a facially constitutional official written policy that prohibits police officers from deploying dogs to bite subjects that do not pose a threat, but, in practice, a police officer who deploys a police dog to bite a subject under such circumstances is exonerated upon review by the municipality's final policy maker, then there are effectively <u>two</u> policies in force (i) the facially constitutional official written policy that can be safely ignored in practice by the police officer and (ii) an unofficial unconstitutional policy or custom that condones and encourages the unconstitutional deployment of dogs to bite subjects who pose no threat. This is the proper understanding of ratification in the context of *Monell* claims. Indeed the Supreme Court made this understanding clear more than thirty years ago:

> When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final. *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S. Ct. 915 (1988) *(emphasis in original).*

When a municipality's final policy maker reviews the conduct of a subordinate who commits an unconstitutional act, the final policy maker can either absolve the municipality of *Monell* liability by condemning the unconstitutional act as a violation of the municipality's policy or the final policy maker can confer *Monell* liability upon the municipality by determining that the unconstitutional act conforms with the municipality's policy.  Essentially, ratification holds a municipality liable for whitewashing the unconstitutional acts of its state actors.

Ratification, by its very nature, always occurs after the unconstitutional act. In general, in the course of most reviews of alleged violations of constitutional rights, it is not possible to "undo" the violation.  One cannot unring a bell.  For example, it is not possible for a police chief, acting as the final policy maker for a municipality, to "undo" an instance of excessive force applied by a subordinate officer or to "undo" a false arrest by an officer.  However, by ratifying and condoning such behavior, even when an official written policy facially proscribes such misconduct, the chief is actually recognizing or creating an official unconstitutional policy or custom that subjects the department and the municipality to *Monell* liability.

And that is precisely what the Plaintiffs have alleged in their Complaint.  They allege that the LPD maintains a facially constitutional written Use of Force policy, but that in practice, it also maintains an "off-the-books" unconstitutional official policy or custom of ratifying and condoning the unconstitutional acts of LPD officers (which is tantamount to failure to discipline the officers) when the Chief of the Lynchburg Police Department, acting as the final policy maker for the City of Lynchburg, whitewashes the misconduct of his subordinates upon review their unconstitutional acts.  Thus, the Plaintiffs' ratification and failure to discipline *Monell* claims are plausible and should not be dismissed at this time.

**SHANTA LYNETTE BROWN and AQUASHA SANDIDGE**
**By Counsel**

 **/s/ M. Paul Valois**
**M. Paul Valois, Esquire**
**Virginia State Bar No. 72326**
**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**
**mvalois@vbclegal.com**

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2023, I electronically filed the foregoing Memorandum with the Clerk of this Court using the CM/ECF system, which will automatically send notice of this filing to all counsel of record.

/s/ M. Paul Valois
