IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SHANTA BROWN | ) |
| | ) |
| and | ) |
| | ) |
| AQUASHA SANDIDGE, | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | ) CASE No: 6:23cv00054 |
| | ) |
| CITY OF LYNCHBURG, *et al*. | ) |
| *Defendants*. | ) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF LT. S. GRADY ORR

COME NOW the Plaintiffs, by counsel, in support of their Motion to Exclude the Testimony of Lt. S. Grady Orr as an expert for the Defendants. Lt. Orr submitted a report, a copy of which is attached hereto and incorporated herein as **EXHIBIT A** and the Plaintiffs seek to exclude his testimony on the following grounds:

### AUTHORITY

Federal Rule of Evidence 702 (as amended in 2023) provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Rule 702 was recently substantially amended to clarify and emphasize the judge's role as a true gatekeeper for expert testimony. The proponent of expert testimony has the burden of

establishing all four criteria — parts (a) through (d) — by a preponderance of the evidence. Furthermore, the new language requires a tighter connection between experts' opinions and the methods they use.

It remains true under Rule 704 that "an opinion is not objectionable just because it embraces an ultimate issue." However, the overarching principle remains that the expert testimony must aid, not usurp, the jury in deciding ultimate issues of fact. Legal conclusions are inadmissible.

"Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination." *United States v. Barile*, 286 F.3d 749 (4th Cir.) (2002) "The role of the district court, therefore, is to distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion." Id. "The best way to determine whether opinion testimony contains legal conclusions, 'is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" Id. quoting *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir.1985)

Courts have consistently restricted the use of police experts to testimony regarding generally accepted practices and procedures and have consistently refused to admit personal opinions. See, *e.g. United States v. Mohr,* 318 F.3d 613 (4th Cir. 2003) and *Vathekan v. Prince George's County,* 154 F.3d 173 (4th Cir. 1998)

## ARGUMENT

### I. LT. ORR'S METHODOLOGY IS FLAWED

Lt. Orr's methodology runs afoul of Rule 702 right out of the gate, when he describes the first step in his methodology on page 2 of his report: "Formulate an Understanding of the Facts: Following a review of the information I am provided I will develop and state my understanding of the facts." As is clear from the report, Lt. Orr uses methods that go beyond mere observation and relation of facts

(actual or hypothetical) and dive headfirst into the realm of "formulation" and "understanding." The result is that his opinions are rife with examples of purportedly factual "findings" that rely on mere speculation, along with his plain bias in favor of the defendant officers and his own anecdotal personal experience.

Specific examples of the application of this flawed methodology include:

1. On page 12 of his report, Lt. Orr relates the following: "In this incident, based on their actions taken, I <u>find</u> that Officers Z. Miller, S. Reed, and R. Miller acted within their training and the parameters of the listed performance outcomes <u>in order</u> to bring a dangerous and increasingly volatile situation to a safe conclusion." (emphasis added) Not only has Lt. Orr usurped the role of factfinder, but he has done so by speculating into the motives of the defendant police officers in order to absolve them.

2. In the same paragraph as above, Lt. Orr writes: "Brown's behavior, if allowed to escalate again, <u>could</u> have <u>potentially</u> led to a higher level of force being necessary if Officer Z. Miller had not followed through with the decision to detain Brown when he did." Again, this opinion is nothing but plainly admitted speculation that can only serve to confuse or mislead a jury.

3. On page 13 of his report, in paragraph E(a)(ii), Lt. Orr writes: "Shanta Brown attempted to physically interject herself into the officers' <u>lawful</u> objectives twice during the entire encounter." (emphasis added) Of course, the Complaint specifically alleges that officers were engaged in <u>unlawful</u> conduct and the opinion provides no basis for the claim that officers' objectives were lawful.

4. On the same page at paragraph E(a)(iii), Lt. Orr writes: "Shanta Brown stated that she was a correctional officer by profession. To this fact, it is quite reasonable to assume that Brown has likely dealt with non-compliant inmates in a jail setting and knows or should know the potential danger it poses to officers when otherwise non-involved persons/inmates try to

interject/intervene physically into a situation that officers are trying to address. Despite this fact, I have often instructed many police officers that when emotions are high, rational thinking is inversely low which would stand to be directly applicable to this incident and thus an explanation for Shanta Brown's behavior." Lt. Orr begins here with an assumption and then jumps through a conclusion in order to reach his purported "explanation" of the facts.

5. The pattern continues in paragraph E(a)(iv): "Officer Z. Miller attempted to give Shanta Brown a <u>lawful</u> direction to place her arms behind her back so that she could be placed into handcuffs while standing. <u>It was Brown's decision</u> not to comply and the actively resistive nature of Brown's behavior <u>that ultimately caused</u> both Shanta Brown and Officer Z. Miller to lose balance and go to the ground before she could be successfully handcuffed." (emphasis added) Here, Lt. Orr again presumes that the defendants are acting lawfully in order to reach the ultimate issue of causation.

6. Paragraph E(a)(v) (on page 14 of the report) reads: "It was Aquasha Sandidge's behavior while Brown was being handcuffed and how she actively resisted Detective R. Miller's attempts to compel her movement away from the situation that caused her to lose her balance and fall backwards on top of Detective R. Miller. Had Sandidge more readily complied with R. Miller's directions to move away, she likely would not have fallen to the ground at all and could have been safely detained while standing." It is axiomatic that citizens in Virginia have the right to use reasonable force to resist an unlawful arrest. Lt. Orr's opinions in his paragraph are all based on his personal belief that the police acted lawfully.

7. Things go from bad to worse. In paragraph H(e) (on page 15 of his report), Lt. Orr writes: "During the incident on April 28, 2020, based on my review of all the video footage made available to me, it is apparent that Brown not only obstructed justice by attempting to unlawfully intervene in law enforcement action, but also demonstrated Active Resistance when

the decision was made to go hands-on and detain her. Furthermore, it is my opinion that Shanta Brown's active resistance to being detained is what caused the response to resistance demonstrated by Officer Z. Miller and resulted in Brown ultimately being handcuffed on the ground versus a standing position." Lt. Orr is aware that Brown was acquitted of obstruction of justice by a jury and yet he "opines" that she is guilty of it, notwithstanding the jury verdict and dismissal. Once again, this "opinion" presupposes that the police were acting lawfully – a legal conclusion that will be made by the jury.

8. In paragraph I(c)(ii) of his report (on page 16), Lt. Orr writes: "The ideal de-escalation of a scenario involves no force being utilized. A successful de-escalation of any scenario is one in which the minimal amount of force is utilized to achieve the <u>lawful</u> objective(s) of the involved officer(s). Had Shanta Brown and Aquasha Sandidge simply complied with officers' <u>lawful</u> directions, it is highly unlikely that the situation would have devolved into both Brown and Sandidge being handcuffed on the ground." (emphasis added) Again, this conclusion is based not only on speculation, but also on the premise that the officers acted lawfully.

9. In paragraphs I(c)(iii) and I(c)(iv), Lt. Orr speculates as to the motives of the defendants in order to conclude in paragraph I(c)(iii) that " Officer Grooms demonstrated she also knew that detaining the females was a prudent option" and in paragraph I(c)(iv) that "when officers had the safe ability to do so (after Terron Pannell was secured and other officers began to arrive), the decision was made to detain Shanta Brown for her interference." Lt. Orr has no way of knowing why the officers made the decisions they made.

10. In paragraph I(d) of his report, Lt. Orr writes: "It is a common misperception that verbal de-escalation is an absolute remedy to all situations. It is important to understand that the subject(s) in question, in this case Brown and Sandidge, always get a say-so in how the situation will play out. Any subject's behavior has a direct effect on how officers ultimately respond and in this

incident Brown's behavior is what caused the decision to be made by officers for her to be placed into handcuffs." Once again, this legal conclusion of causation is predicated upon the presumption that officers acted lawfully. That is for a jury to decide.

11. Paragraph I(e) (on page 17 of the report) is a mashup of presumption, speculation, mind-reading and bias. Telling excerpts of this paragraph include:

    a) "In my professional opinion, Officers Z. Miller, T. Grooms, and S. Reed, all conducted themselves in a manner that is consistent with trying to de-escalate, or not further escalate, the incident."

    b) "Even Officer Grooms demonstrated in her mind the forethought that she had to finally detain Shanta Brown for the purposes of de-escalating the entire situation."

    c) " Officers repeatedly gave lawful commands for Shanta Brown and Aquasha Sandidge to stay back from officers as they tried to achieve their objectives with Pannell."

    d) " It was Brown and Sandidge's disobeying of officers' directions that ultimately caused the decision to be made to place them into handcuffs."

    e) "The question could be posed as to why officers waited to detain Brown and Sandidge for their interference, but due to a lack of officers initially on-scene as they were trying to deal with a non-compliant Terron Pannell it was not safe for officers to try and detain Brown and Sandidge prior to additional backup being called." Here, Lt. Orr anticipates cross-examination and then answers with speculation.

12. In the summary of his opinions provided in paragraph J of his report (beginning on page 17), the application of his methodology bears fruit in the form of factfinding.

    a) In paragraph J(a), Lt. Orr "finds" that the conduct of the officers was "reasonable" in detaining all of the subjects relevant to the Complaint.

b) In paragraph J(b), Lt. Orr "finds" that Zachary Miller's use of force against Shanta Brown was "reasonable."

c) In paragraph J(b)(ii), Lt. Orr opines that Zachary Miller's decision to detain Shanta Brown was "well within the standards held in *Graham v. Connor*" to justify detention. Leaving alone the fact that *Graham v. Connor* does not speak to any standards for detention, it is not the proper role of an expert to reach any legal conclusion.

d) In paragraph J(c)(i) (found on page 18 of his report), Lt. Orr opined that Defendant Robbin Miller's use of force against Plaintiff Aquasha Sandidge was both "reasonable" and "appropriate."

e) In paragraph J(ci) of his report, Lt. Orr reaches findings and legal conclusions regarding the ultimate issue of the case: "I find that the willful Active Resistance, by both Shanta Brown and Aquasha Sandidge, to disregard the legal authority of Officers Z. Miller, R. Miller, and S. Reed, are ultimately the root cause of them being detained in handcuffs on the ground versus in a standing position."

f) In paragraph J(cii) of his report, Lt. Orr assumes not only the role of the counsel, witness and the jury as a factfinder, but also of the judge as gatekeeper: "To address the complaint that officers gave false/inconsistent testimony in order to maliciously prosecute the Plaintiffs, it is my opinion that this complaint is merely a matter of biased perspective by the Plaintiffs. To address the complaint that officers gave false/inconsistent testimony in order to maliciously prosecute the Plaintiffs, it is my opinion that this complaint also has no foundation. Based on my experience in 18+ years of law enforcement, I can offer that a large majority of the persons whom I have either personally arrested or whose arrests I have been a witness, have failed to take accountability or responsibility for their own actions in

the situation, and it is not uncommon for similar claims to be made, that officers are fabricating events when testimony is given to a magistrate to obtain arrest warrants."

It is clear that the methods used by Lt. Orr do meet the Defendant's burden under Rule 702 to show that his opinion "reflects a reliable application of the principles and methods to the facts of the case." While there are some matters in his opinion that relate to training requirements and internal policies, these opinions cannot stand on their own and would be confusing and meaningless.

## II.     LT. ORR'S REPORT IS PERMEATED WITH LEGAL CONCLUSIONS AND UNSUPPORTED FACTUAL CONCLUSIONS

As noted above, without rehashing it here, the Lt. Orr's methodology leads directly to a host of unsupported and speculative opinions and legal conclusions that will only serve to confuse, mislead or replace the jury.

## CONCLUSION

The Plaintiffs pray that this Court exclude the expert testimony of Lt. Orr.

Respectfully Submitted.

**SHANTA BROWN and AQUASHA SANDIDGE**
By Counsel

**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**

**By: /s/ M. Paul Valois**
    **M. Paul Valois, Esquire**
    **Counsel for Plaintiffs**
    **Virginia State Bar No. 72326**
    **mvalois@vbclegal.com**

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 12th day of November, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                            /s/ M. Paul Valois
                                             M. Paul Valois