IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SHANTA LYNETTE BROWN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action: 6:23cv00054 |
| ) | |
| THE CITY OF LYNCHBURG, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF LT. S. GRADY ORR

Defendants City of Lynchburg, LPD Officer Seth Reed, Deputy Zachary Miller, and LPD Officer Robbin Miller (collectively, "Defendants"), by counsel, respectfully submit this Memorandum in Opposition to Plaintiffs' Motion to Exclude the Expert Testimony of Lt. S. Grady Orr and state:

### INTRODUCTION

On October 14, 2024, Defendants provided to Plaintiffs' counsel their Rule 26 Expert Disclosure and identified Lt. S. Grady Orr as their expert in this case. Exhibit A (the "Disclosure"). Defendants attached Lt. Orr's expert report (the "Report") and *curriculum vitae* to the Disclosure. Therein, Lt. Orr detailed his extensive background and qualifications that demonstrate his specialized knowledge regarding generally accepted law enforcement training and practices. In his Report, he opined that the defendant officers acted in accordance with those training and practices during the subject incident, and he based that opinion on a litany of materials identified in his Report. Those materials include comprehensive body and dash camera footage of the subject incident, as well as Plaintiffs' complaint and expert report. His opinions were the product of a reliable methodology, which was thoroughly outlined on page 2 of his

1

Report, and they reflect a reliable application of that methodology to his expert understanding of the facts of the case.

On November 12, 2024, Plaintiffs filed a Motion to Exclude the Expert Testimony of Lt. Orr [ECF 37] and memorandum in support (the "Motion") [ECF 38], asserting at a high level that Lt. Orr implemented a "flawed methodology" in forming his opinions and that Lt. Orr's report contains "legal conclusions" and unsupported factual "findings." (Mot. at 3, 8.) Specifically, Plaintiffs assert that Lt. Orr erred by "formulating" an "understanding" of the facts as presented to him. (*Id.* at 3.) They further assert that Lt. Orr's opinions are permeated with "purportedly factual 'findings' that rely on mere speculation, along with his plain bias in favor of the defendant officers and his own personal experience." (*Id.*)

The body of Plaintiffs' argument, however, appears more like cross-examination than bases for exclusion. Essentially, Plaintiffs excise excerpts of Lt. Orr's report out of context and attempt to poke holes in them by nit-picking specific word choices or characterizations. (*See id.* at 3-9.) These sorts of arguments, however, go to the weight of the testimony, not its admissibility. Furthermore, Plaintiffs have hired their own expert to testify on the issues of the case and will have the opportunity to cross-examine Lt. Orr at trial.

Plaintiffs also attempt to confuse Lt. Orr's role of assisting the jury by providing expert analysis and opinions regarding the evidence with the jury's role of applying the law to the facts as they find them. While Lt. Orr's opinions may "embrac[e] an ultimate issue of fact[,]" nowhere does he tell the fact-finder what facts it should apply the law to. Rather, Lt. Orr applies his expert knowledge of generally accepted law enforcement training and practices, as well as his understanding of the Lynchburg Police Department's policies and procedures, to the defendant officers' observable actions within the circumstances.

Lt. Orr is permitted to assist the jury, with his years of relevant training and experience, in understanding whether the defendant officers' conduct was consistent with how a "reasonable officer" on the scene would have acted. *See Clem v. Corbeau*, 98 F. App'x 197, 201 (4th Cir. 2004). Certainly, the level of training and experience required in order to make such a determination qualifies the issue as a highly technical one, beyond the everyday knowledge and experience of a lay juror. Thus, Lt. Orr's opinions are permissible primarily for the reason that they are helpful to the jury, and secondarily because they are supported by an abundance of facts.

Because Lt. Orr, through reliable principles and methodology, reliably applied his expert knowledge and experience to the facts as presented to him by both parties to this litigation, this Court should deny Plaintiffs' motion to exclude his expert testimony.

## ARGUMENT

### I.	Legal Standard.

Rule 702 of the Federal Rules of Evidence provides that an expert witness may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the United States Supreme Court explained expert evidence is admissible under Federal Rule 702 if it "rests on a reliable foundation and is relevant." Trial courts have "broad latitude" in determining the reliability of an expert's opinion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999); *EEOC v. Freeman*, 778 F.3d 463, 466 (4th Cir. 2015). "Rejection of expert testimony is the

3

exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

The Rule 702 inquiry is "'a flexible one.'" *Kumho*, 526 U.S. at 150. (quoting *Daubert*, 509 U.S. at 594). Determining the reliability of expert testimony is highly dependent upon the facts of the particular case. *Kumho*, 526 U.S. at 150. "[T]here are many different kinds of experts, and many different kinds of expertise." *Id*. In some cases, reliability is measured on scientific foundations; in others, "the relevant concerns may focus upon personal knowledge or experience." *Id.* An expert may draw a conclusion from a set of observations "based on extensive and specialized experience." *Id.* at 156. Rule 702 speaks to an expert's qualifications in the disjunctive; "a person may qualify to render expert testimony in *any one of the five ways listed*: knowledge, skill, experience, training, or education." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (emphasis added); Fed. R. Evid. 702.

The Advisory Committee on the 2000 Amendments to Federal Rule 702 expressly stated that under the Rule, an individual's training and experience can serve as sufficient foundation for expert testimony:

> Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. *In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony*.

(emphasis added). In *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007), the Court elaborated on the foundational requirements for expert testimony:

4

> A district court's reliability determination does not exist in a vacuum, as there exist meaningful differences in how reliability must be examined with respect to expert testimony that is primarily experiential in nature as opposed to scientific. Purely scientific testimony, for example, is characterized by "its falsifiability, or refutability, or testability." *Daubert*, 509 U.S. at 593. Thus, such evidence is "objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication." Fed. R. Evid. 702 advisory committee's note.
>
> Experiential expert testimony, on the other hand does not "rely on anything like a scientific method." *Id. But this does not lead to a conclusion that "experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide a sufficient foundation for expert testimony.*

(emphasis added). An experiential expert witness's testimony is admissible if he explains how his experience leads to his conclusions, why his experience is a sufficient basis for his opinions, and how his experience is reliably applied to the facts. Fed. R. Evid. 702 advisory committee's note.

The Fourth Circuit Court of Appeals has emphasized "[t]estimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf*, 993 F.2d at 377. And "[e]ven then, the erroneous admission of such testimony is usually harmless." *Id.* An expert witness "may testify in the form of an opinion or otherwise," and "an opinion is not objectionable 'simply because it embraces an ultimate issue to be decided by the trier of fact.'" *Id.* (citing Fed. R. Evid. 704(a)). In determining whether opinion testimony should be excluded, Rule 702 is "broadly interpreted"; the touchstone is its helpfulness to the jury. *Id.* at 377, 388 (internal citation omitted).

The Fourth Circuit has noted that when the legal regime is complex and the judge determines that the witness's testimony would be helpful in explaining it to the jury, the testimony may be admitted. See *United States v. Barile*, 286 F.3d 749, 760 n.7 (4th Cir. 2002).

5

"Indeed, courts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).

"An 'objective reasonableness' test like that used to determine the reasonableness of force 'implies the existence of a standard of conduct,' and where that standard is defined, not by a reasonable person, but by a reasonable officer, 'it is more likely that Rule 702's line between common and specialized knowledge has been crossed.'" *United States v. Mohr*, 318 F.3d 613, 624 (4th Cir. 2003) (quoting *Kopf* at 378).

## II. Lt. Orr's "formulation" of an "understanding" of the facts is his relation of the facts as he perceives them; his "findings" are his expert opinions.

Plaintiffs take issue with Lt. Orr's "formulation" of an "understanding" of the facts and assert that he should have merely "observed" and "related" the facts. There are at least two obvious problems with this argument. First, in order to relate facts, one must necessarily formulate an understanding of one's observations. Second, in order to fulfill his role as expert witness and supply expert opinions, an expert must necessarily apply his knowledge and experience to his understanding of the facts. It is not the role of the jury to formulate an expert's understanding of the facts. Their role is to find the facts.

On that point, Plaintiffs point out several places in Lt. Orr's report where he uses the word "find," apparently to imply that Lt. Orr is invading the province of the jury by acting as a "fact-finder." On the contrary, Lt. Orr clearly uses this word in order to state his expert opinions.

For example, Plaintiffs highlight where Lt. Orr in paragraph J(a) of his report "finds" that the officers' detainment of the Plaintiffs was "consistent with accepted law enforcement training and practices" and "reasonable under the circumstances." (Mot. at 6; Rep. at 17.) This is clearly

6

not a finding of fact. It is Lt. Orr's expert opinion that the officer's conduct was consistent with how a reasonable officer would act under similar circumstances according to his training. This is precisely the kind of opinion that he, as an expert in generally accepted law enforcement training and practices, should offer. *See Mohr*, 318 F.3d at 624; *Clem*, 98 F. App'x at 201; *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006).

Plaintiffs also highlight where Lt. Orr in paragraph J(b) "finds" that Zachary Miller's use of force against Shanta Brown was "reasonable, appropriate and within City of Lynchburg Police Department's Use of Force policy and accepted law enforcement practice." (Mot. at 7; Rep. at 17.) Again, this is not a finding of fact, but an expert opinion similar to the one just detailed above. Essentially, Plaintiffs pounce on Lt. Orr's word choices in an attempt to mischaracterize his expert opinions as factual findings.

Finally, and importantly, Lt. Orr's list of "Materials Reviewed" includes information provided by both sides to this litigation. In addition to comprehensive body camera and dash camera footage of the entire subject incident, Lt. Orr also learned Plaintiffs' description of the events by reviewing both Plaintiffs' Complaint and Plaintiffs' expert report. In other words, Lt. Orr's expert opinions are based on sufficient—and unbiased—facts and data.

**III.     Lt. Orr's "speculations" were applications of his expert knowledge and experience to observable, identifiable evidence.**

Plaintiffs accuse Lt. Orr of making factual findings that rely on mere speculation. (Mot. at 3.) Specifically, they allege that Lt. Orr "speculated into the motives of the defendant police officers" by opining that they "acted within their training and the parameters of the listed performance outcomes . . . in order to bring a dangerous and increasingly volatile situation to a safe conclusion." (*Id.*) The fact that it was a volatile situation is obvious from the video footage and requires no speculation. So is the fact that it came to a safe conclusion. There is no evidence

7

on the record that anyone involved required medical attention. The only potential speculation is that the officers acted "in order to" bring it to a safe conclusion, which speculation is wholly consistent with their observable actions and outcomes. Regardless, it is immaterial to the heart of Lt. Orr's opinion, which is that the defendant officers "acted within their training and the parameters of the listed performance outcomes . . . ." (Rep. at 12.)

Plaintiffs further assert that Lt. Orr speculated by stating that "Brown's behavior, if allowed to escalate again, could have potentially led to a higher level of force being necessary if Officer Z. Miller had not followed through with the decision to detain Brown when he did." (Mot. at 3.) Again, this speculation is consistent with Brown's observable past behavior at the scene, which had indeed escalated twice prior to the order to detain her: once when she pushed into Officer Grooms and knocked off her body worn camera, and again when she made contact with Officers Miller and Reed while they were subduing Pannell on the ground.

Plaintiffs argue that Lt. Orr speculated that Brown, as a correctional officer, "has likely dealt with non-compliant inmates in a jail setting and knows or should know the potential danger it poses to officers when otherwise non-involved persons/inmates try to interject/intervene physically into a situation that officers are trying to address." (Mot. at 3-4.) This alleged speculation, though based in common sense, is immaterial to Lt. Orr's opinion that the officers responded appropriately to Brown's attempt to intervene physically into their handling of Pannell. (Rep. at 12.)

Plaintiffs argue that Lt. Orr speculated that had Plaintiffs "simply complied with the officers' lawful directions, it is highly unlikely the situation would have devolved into both Brown and Sandidge being handcuffed on the ground." (Mot. at 5.) This alleged speculation,

8

though also based in common sense, is immaterial to Lt. Orr's opinion that the officers acted in accordance with their training and procedures while detaining Plaintiffs. (Rep. at 12.)

Plaintiffs argue that Lt. Orr speculated as to the motives of the defendant officers when he opined that "Officer Grooms demonstrated she also knew that detaining the females was a prudent option" and that the officers made the decision to detain Plaintiffs when they had "the safe ability to do so (after Terron Pannell was secured and other officers began to arrive)." (Mot. at 5.) This alleged speculation is consistent with observable evidence on the record. Officer Grooms can be seen on her dash cam footage attempting to restrain Shanta Brown's arms behind her back after Ms. Brown assaulted the officers. Officer Reed can be seen on the same dash cam footage giving the order to handcuff the Plaintiffs immediately prior to Detective Miller arriving on the scene and approaching Officer Reed.

Plaintiffs argue that Lt. Orr speculated that "Officer Grooms demonstrated in her mind the forethought that she had to finally detain Shanta Brown for the purposes of de-escalating the entire situation." (Mot. at 6.) This alleged speculation is based on the observable action of Officer Grooms attempting to secure Brown's hands behind her back after she assaulted the officers. It is also immaterial to Lt. Orr's expert opinion that the decision to detain Plaintiffs was made in accordance with generally accepted law enforcement training and practices.

Plaintiffs argue that Lt. Orr speculated that the officers waited to detain Plaintiffs "due to a lack of officers initially on-scene as they were trying to deal with a non-compliant Terron Pannell" and because "it was not safe for officers to try and detain Brown and Sandidge prior to additional backup being called." (Mot. at 6.) This speculation is based on the application of Lt. Orr's expert knowledge and experience to the observable facts. Regardless, the precise reason why the officers made the decision to detain Plaintiffs when they did is immaterial to Lt. Orr's

9

opinion that they acted in accordance with generally accepted law enforcement practice and training in detaining Plaintiffs.

In conclusion, Lt. Orr based his opinions on observable video evidence, and any conjecture was immaterial to his opinions.

### IV. Any bias in Lt. Orr's analysis goes to the weight of his opinions, not their admissibility.

Plaintiffs assert that Lt. Orr's opinions are based upon "his plain bias in favor of the defendant officers . . . ." (Mot. at 3.) Although they do not state specifically where this alleged bias occurs in Lt. Orr's report, presumably they are referring to Lt. Orr's use of "lawful" to describe the defendant officers' actions, which Plaintiffs suggest arose from Lt. Orr's "personal belief that the police acted lawfully." (*Id.* at 4.) On the contrary, Lt. Orr's description of the officers' actions as "lawful" is based upon his observation of the video footage and expert assessment of the officers' conduct, and is not evidence of any personal bias.

Notwithstanding that, any question as to Lt. Orr's bias or credibility may be appropriately addressed during cross-examination at trial. *See, e.g.*, *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000) ("Determining the credibility of a witness is the jury's province, whether the witness is lay or expert."); *Patricia Ann Green, Adm'r of the Estate of Herman Michael Green v. Ford Motor Co.*, 2001 U.S. Dist. LEXIS 19883 at * (W.D. Va. Nov. 26, 2001) ("[A]n expert witness's bias generally goes to the weight, not the admissibility of the testimony.").

Accordingly, even if there was bias in Lt. Orr's testimony, it is not proper grounds for exclusion.

### V.    Lt. Orr is permitted to rely on his personal, anecdotal experience as a law enforcement officer.

Plaintiffs further assert that Lt. Orr's opinions rely upon his own "anecdotal personal experience." (Mot. at 3.) While the support for this assertion is scant, even if it were true, the fact that an expert's opinions "are based, in large measure, on [his] personal experience does not preclude him from offering the opinions." *Concordia Pharms., Inc. v. Method Pharms., LLC*, Civil Action No. 3:14CV00016, 2016 U.S. Dist. LEXIS 50221, at *17 (W.D. Va. Apr. 13, 2016). "[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's note) (internal quotes omitted).

The only example Plaintiffs point to of Lt. Orr applying his own personal experience is in paragraph J(ciii) of his Report, in which he addresses Plaintiffs' allegations that the officers gave false or inconsistent testimony in order to maliciously prosecute the Plaintiffs:

> Based on my experience in 18+ years of law enforcement, I can offer that a large majority of the persons who[m] I have either personally arrested or [to] whose arrests I have been a witness, have failed to take accountability or responsibility for their own actions in the situation, and it is not uncommon for similar claims to be made, that officers are fabricating events when testimony is given to a magistrate to obtain arrest warrants.

(Rep. at 18.)

Lt. Orr's testimony here, while personal and anecdotal, is permitted as helpful to the trier of fact, who presumably would not have that experience. Lt. Orr is not opining that the Plaintiffs "failed to take accountability" or wrongly accused the officers of "fabricating events." Rather, he is merely stating that it is not uncommon, in his experience, for such accusations to be made by persons being arrested. He leaves it up to the jury to decide whether the defendant officers

fabricated events in order to maliciously prosecute Plaintiffs. Accordingly, Lt. Orr's application of his personal experience to the facts is not grounds for exclusion of his testimony.

### VI.     Lt. Orr's expert opinions are not "legal conclusions."

Plaintiffs assert Lt. Orr's Report is "permeated with legal conclusions." (Mot. at 8.) Specifically, they assert that Lt. Orr "usurped the role of factfinder" when he opined that the defendant officers "acted within their training and the parameters of the listed performance outcomes in order to bring a dangerous and increasingly volatile situation to a safe conclusion." (*Id.* at 3.) Far from a legal conclusion, this opinion is precisely the kind that an expert in law enforcement training and procedures should make, as argued previously.

Plaintiffs assert further that Lt. Orr concluded that Plaintiff Shanta Brown had "obstructed justice by attempting to unlawfully intervene in law enforcement action . . . ." (*Id.* at 4.) Whether Shanta Brown obstructed justice is not at issue in this lawsuit. Rather, the issue is whether the defendant officers maliciously prosecuted her for obstruction of justice and assault. So, to the extent that Lt. Orr's opinion that she obstructed justice is a legal conclusion, the jury is not being asked to make a finding on obstruction of justice anyway.

Plaintiffs also assert that Lt. Orr stated a legal conclusion when he said that Brown's behavior "is what caused the decision to be made by the officers for her to be placed in handcuffs." (*Id.* at 5-6.) This is neither a legal conclusion nor the province of the jury. Lt. Orr did not opine that the officers had "probable cause" to arrest Brown, which is a term of art that would bring this opinion into the realm of a legal conclusion.

Plaintiffs also assert that Lt. Orr stated a legal conclusion when he opined that Officer Z. Miller was "well within the standards held in *Graham v. Connor*[, 490 U.S. 386 (1989)] to detain Brown and use the appropriate level of force to do so." (*Id.* at 7.) As Lt. Orr stated in paragraph

12

G of his Report, "[t]he factors to consider in law enforcement today when a use of force decision must be made come from United States Supreme Court case *Graham v. Connor* (1989) which established the 'reasonableness standard' utilized in the use of force justification. These factors to consider are taught to law enforcement personnel across the United States . . . ." (Rep. at 14.) Defendants do not present Lt. Orr as a legal expert nor would it be proper for a non-lawyer to educate the jury on the law. *City of Huntington v. AmerisourceBergen Drug Corp.*, 2021 U.S. Dist. LEXIS 72508, at *12 (S.D. W. Va. Apr. 15, 2021). But Lt. Orr does not have to be a legal expert to consider and discuss the factors espoused in *Graham v. Connor*, 490 U.S. 386 (1989). Police officers are trained on the *Graham* factors in deciding whether and to what extent to use force, and Lt. Orr considers *Graham* when evaluating the appropriate use of force in a given scenario. (*See* Rep. at 14.) Indeed, the Lynchburg Police Department ("LPD") Use of Force Policy in place at the time of the underlying incident, attached hereto as Exhibit B, echoes *Graham* in providing that officers "will use only such force as is reasonably necessary to effect lawful objectives." (PD19-0602 at 5.)

Police use of force experts reference *Graham* because its guidelines provide the framework for use of force encounters. *See, e.g.*, *Wolfe v. Dep't of Homeland Sec.*, 2019 U.S. Dist. LEXIS 167510, at *14-15 (D.D.C. Sep. 27, 2019) (relying on testimony from the defendant's use of force expert, who "presented expert testimony on the reasonableness of [the police officer's] use of force . . . referencing the Supreme Court opinion in *Graham v. Connor*, and its non-exhaustive list of factors, for determining whether an officer's use of force is objectively reasonable") (internal citations omitted). Unsurprisingly, Plaintiffs' own use of force expert similarly evaluated the officers' use of force by referencing *Graham*, and noted "officers are trained on the use of force standards" from that case. (Dunston Rep. at 4, attached hereto as

13

Exhibit C.) In short, Lt. Orr is opining on whether Officer Miller's conduct comported with his law enforcement training, which includes the reasonableness standard for use of force contained in *Graham v. Connor*.

Plaintiffs also assert that Lt. Orr stated a legal conclusion when he opined that Plaintiffs' active resistance was "ultimately the root cause of them being detained in handcuffs on the ground versus in a standing position." (Mot. at 7.) This is merely a statement about law enforcement training and procedures regarding the conditions under which a suspect can be detained on the ground versus in a standing position.

In summary, Plaintiffs' alleged "legal conclusions" by Lt. Orr are merely his expert opinions regarding whether the defendant officers comported with generally accepted law enforcement training and practices. Lt. Orr reliably analyzed the circumstances of this case based on his extensive knowledge and expertise on use of force standards and the proper application of force. Plaintiff's objections are more appropriately explored through cross examination. Lt. Orr's testimony should be permitted.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiff's Motion to Exclude the Expert Testimony of Lt. S. Grady Orr.

CITY OF LYNCHBURG, SETH REED,
ZACHARY MILLER, and ROBBIN MILLER

By /s/ John R. Fitzgerald
Jim H. Guynn, Jr. (VSB #22299)
John R. Fitzgerald (VSB #98921)
GUYNN WADDELL, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:     540-389-2350
Email: jimg@guynnwaddell.com
           johnf@guynnwaddell.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of November, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

M. Paul Valois (VSB 72326)
James River Legal Associates
7601 Timberlake Road
Lynchburg, VA 24502
T: 434-845-4529
F: 434-845-8536
Email: mvalois@vbclegal.com
*Counsel for Plaintiffs*

/s/ John R. Fitzgerald
Jim H. Guynn, Jr. (VSB # 22299)
John R. Fitzgerald (VSB # 98921)
GUYNN WADDELL, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:     540-389-2350
Email: JimG@guynnwaddell.com
           JohnF@guynnwaddell.com
*Counsel for Defendants*

15