EXHIBIT B





| WRITTEN DIRECTIVE | No.<br>PD19-0602 | Page:<br>1 of 18 |
|---|---|---|
| Subject:<br><br>**USE OF FORCE** | Effective Date: | 08-01-19 |
| | Supersedes/ Amends: | PD17(3)-0602 |
| | Reference: | 1.3.1-8, 1.3.12, 1.3.13, 46.1.4, 41.1.4 |

### I. Purpose

*1.3.2*

The purpose of this directive is to establish guidelines concerning the authorization, implementation, investigation and documentation of the use of force by officers of the Lynchburg Police Department.

### II. Policy

*1.3.1 / 1.3.12*

It shall be the policy of the Lynchburg Police Department that officers will use only that force necessary to protect life and effect lawful objectives.

### III. Procedure

A. GENERAL

1. For the purposes of this directive *use of force* will encompass both deadly and non-deadly force.

    a. Officers will utilize force in accordance with Lynchburg Police Department training and as deemed reasonably necessary to accomplish lawful police objectives.

    b. Deployment of police canines and tire deflation devices will be considered use of force incidents.

2. For the purposes of this directive, the following definitions will apply:

*1.3.2*

    a. *Deadly force* --  Any use of force that creates a substantial risk of causing death or serious bodily injury.

    b. *Non-deadly force* --  Any use of force that does not create a substantial risk of causing death or serious bodily injury.

    c. *Reasonable belief* -- when facts or circumstances the officer knows, or should know, are such to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

    d. *Serious physical injury* -- a bodily injury that:

        1)  creates a substantial risk of death, *or*

{00447871.DOC  }

EXHIBIT B

2) causes serious, permanent disfigurement, *or*

3) results in long-term loss or impairment of any bodily member or organ.

e. *Physical Force* -- bodily force exceeding the normal force required to take a person into custody:

1) any combination of strength, leverage, take-downs, control or come-along holds used to gain control of an uncooperative person.

2) the use of hands, fists, feet, knees, etc. in striking a person.

**1.3.2 / 1.3.12**

3. An officer may use deadly force *only* when the officer reasonably believes that the action is:

a. in defense of human life, including the officer's life, *or*

b. in defense of any person in imminent danger of serious physical injury, *or*

c. in the apprehension of a fleeing felon, when:

1) the officer reasonably believes that the suspect's freedom represents a significant immediate threat of serious physical injury or death to the officer or to other persons, *and*

2) the officer has probable cause to believe that a felony has been committed and the person to be arrested has committed it, *and*

3) the officer has identified himself as a police officer, and given notice of his intention to arrest (time and circumstances permitting), *and*

4) all other reasonable means of apprehension have been exhausted before deadly force is used.

d. a direct command of a police supervisor with knowledge potentially unknown to the officer, typically in the event of a critical incident.

4. Regarding use of non-deadly force, an officer may employ any level of force reasonably necessary in order to:

a. defend the officer or another person, *or*

b. subdue a person resisting arrest, *or*

EXHIBIT B

      c.   prevent escape from custody.

    5.   An officer will notify his immediate supervisor as soon as practical after an incident involving the use of force.

*1.3.5 / 1.3.12*

    6.   Appropriate medical assistance will be summoned if a use of force incident of any kind results in injuries or a complaint of injuries to a person

        a.   The involved officer(s) will notify LynComm that medical aid is needed and will provide a brief description of the symptoms and type of injury involved.

        b.   LynComm will dispatch emergency medical personnel to treat the injured person.

        c.   Until medical assistance is available, the officer(s) will monitor the involved person closely to detect any changes in physical condition and render first aid within the limits of their training and the equipment available.

*1.3.4*

### B.  USE OF CHEMICAL SPRAY

    1.   Chemical spray (OC Spray, or other issued equipment) may be used as a means of:

        a.  physical restraint or control

        b.  defense of any person.

    2.   Once a person is restrained and under control, the use of chemical spray is no longer justified.

    3.   In cases where chemical spray does not prove effective, officers should utilize other use of force options as necessary for restraint or control.

    4.   Chemical spray will not be used for the following:

        a.   as a threat to make a person comply with an officer's verbal order:

            1)   in a non-arrest situation, or

            2)   when no physical threat or violence appears imminent

        b.   to elicit information from a person

        c.   as retaliation for verbal or physical abuse.

*1.3.5*

    5.   A person who has been sprayed with a chemical spray:

EXHIBIT B Page 4 of 284

a.  will be allowed to flush the affected area with water as soon as practical after the incident, and

b.  will be informed by the officer involved that medical attention is available, at their own expense, if they so desire.

## C.  USE OF TASER

1.  May be used as a means of:

    a.  physical restraint or control

    b.  defense of any person.

2.  Once a person is restrained and under control, the use of the Taser is no longer justified.

3.  In cases where the Taser does not prove effective, officers should utilize other use of force options as necessary for restraint or control.

4.  The Taser will not be used for the following:

    a.  as a threat to make a person comply with an officer's verbal order:

        1)  in a non-arrest situation, or

        2)  when no physical threat or violence appears imminent

    b.  to elicit information from a person

    c.  as retaliation for verbal or physical abuse.

    d.  on any person that does not raise a risk of immediate danger.

*1.3.5*

5.  When the Taser is utilized on a person:

    a.  Officers who have been trained in the removal of probes by a certified Taser instructor will be authorized to remove the probes from non-sensitive areas of the body (described as any area other than the head, neck, breast, or groin).

        1)  Officers will have Lynchburg Fire Department personnel respond and perform a basic patient assessment to ensure the person is medically stable.

        2)  If the probes are located in a sensitive area (described as the head, neck, breast, or groin), the affected person will be

{00447871.DOC }

EXHIBIT B Page 5 of 18

transported to the Lynchburg General Hospital Emergency Department.  Appropriate medical staff will then remove the probes.

3) The affected person will be informed by the officer that additional medical attention is available, at the person's own expense, if they desire to receive such attention.

4) The officer will photograph the affected area before and after probe removal.

b. The officer will place the removed probes in a biohazard/sharps container and place them into the property/evidence system.

c. The probes will be maintained within the evidence system for a minimum period of four years from date of deployment.

6. Supervisors will document any accidental discharge of a Taser that does not constitute a use of force against another person in Blue Team under *Firearm Discharge*.

*1.3.4/1.3.6 D*

D. <u>USE OF PHYSICAL FORCE</u>

1. Officers will use only such force as is reasonably necessary to effect lawful objectives.

2. Physical force may be used as a means of:

a. physical restraint or control

b. subduing a person resisting arrest

c. defense of any person

d. moving, removing or arresting any person who is obstructing a lawful police action in such a manner that the police action cannot be accomplished.

3. Once a person is restrained and under control, the use of physical force will be restricted to that force necessary to retain control.

4. Due to the possibility of positional asphyxiation, handcuffed persons should not be left lying face down.

a. Handcuffed persons should be put into the sitting position or lying on their side position as soon as possible.

{00447871.DOC   }

EXHIBIT B

   b.   Positional asphyxiation is of even greater concern for persons who have consumed drugs or alcohol.

5.   Physical force will not be used for the following:

   a.   to elicit information from a person

   b.   as retaliation for physical or verbal abuse.

*1.3.4*

E.   USE OF POLICE BATON

1.   The issued baton is authorized as a means of:

   a.   physical restraint or control

   b.   defense of any person.

2.   All officers will have the department issued police baton accessible while on regular duty assignment.

   a.   Uniformed officers will have the baton on their person while on duty.

   b.   All other officers will be required to have the baton accessible at the Police Department or within their assigned vehicle.

   c.   Uniformed officers involved in approved off-duty employment will have the baton on their person.

3.   Officers should avoid intentionally striking any person in or about the head with the baton, except as deemed necessary in a situation where use of deadly force is justified.

4.   The baton will not be used for the following:

   a.   the intentional striking of any person who is under control by an officer

   b.   as retaliation for physical or verbal abuse.

F.   USE OF SINGLE LAUNCHER

1.   The use of the 40mm single launcher is authorized as a means of:

   a.   distraction or disarming of an individual

   b.   defense of any person

   c.   civil disturbance or riot control

{00447871.DOC  }

EXHIBIT B

2. All officers authorized to utilize the 40mm single launcher will be responsible for checking it out prior to their tour of duty, and returning it at the conclusion of their tour of duty.

   a. single launchers will be stored and secured in the PD basement gun cabinets, located near the K9 office.

   b. single launchers will be secured in the trunk of the assigned officers patrol vehicle during his or her shift.

3. The single launcher will not be used for the following:

   a. as a threat to make a person comply with an officer's verbal order:

      1) in a non-arrest situation, or

      2) when no physical threat or violence appears imminent

   b. to elicit information from a person

   c. as retaliation for verbal or physical abuse.

G. USE OF FIREARMS

1. For the purposes of this directive, the word *firearm* shall refer to any handgun, or shoulder-fired weapon issued by the department, authorized for concealed carry by the department, or used by an officer for any law enforcement purpose.

2. Officers will be authorized to draw and/or display firearms when in fear for their own safety or the safety of other persons (e.g. building searches, confronting persons believed to be armed or dangerous, etc.).

3. Officers will be authorized to discharge a firearm for the following purposes:

   a. as outlined in Section III.A.3

   b. to kill a seriously injured animal, when:

      1) no other disposition is practical, and

      2) the officer deems it appropriate to relieve the animal from further suffering (authorization should be obtained from a supervisor if time permits)

   c. to kill an animal that poses a danger to the officer or to the public

{00447871.DOC }

EXHIBIT B

    d.   department training and qualification

    e.   department approved test firing.

*1.3.3 / 1.3.12*

4.   Officers are prohibited from discharging a firearm for the purpose of a warning shot.

5.   Discharging a firearm at or from a moving vehicle is authorized *only* when:

    a.   any occupant of the suspect vehicle is using, or threatening to use, deadly force by a means other than the vehicle, *or*

    b.   a vehicle is being operated in a manner indicating *deliberate intent* to strike an officer or another person, *and*

    c.   all other reasonable means of defense have been exhausted or are not available (including moving out of the path of the vehicle), *and*

    d.   the safety of innocent persons will not be unduly jeopardized by the officer's action.

6.   Officers faced with the possible necessity of discharging a firearm should remain cognizant of the following:

    a.   the direction in which the firearm is to be discharged

    b.   that the target threat is in plain view and that the target threat is identified

    c.   the danger inherent in discharging a firearm while running or moving, due to the possibility of unintended persons or property being struck by projectiles.

*1.3.6 A*

7.   Reporting discharge of firearms:

    a.   On-duty officers will verbally report to their supervisor and off-duty officers will verbally report to the on-duty Watch Commander the following:

        1)   any discharge of a firearm constituting use of deadly force against another person (on or off duty)

        2)   any accidental discharge of a department issued or a department authorized firearm (on or off duty)

        3)   on-duty discharge of any firearm for any purpose other than department-sanctioned training.

EXHIBIT B

b.  Such verbal report shall be made as soon as incident circumstances permit.

c.  Supervisors will document in Blue Team a *Use of Force* incident involving any discharge of a firearm that constitutes use of deadly force against another person.

d.  Pursuant to the Code of Virginia §52-28.2, the Professional Standards Unit will report to the Federal Bureau of Investigation (FBI) all Use of Force incidents that result in the death of or serious bodily injury to a person, or when a firearm is discharged by a law enforcement officer in the direction of a person.  The incident will be reported electronically via the Law Enforcement Enterprise Portal (LEEP), which is maintained by the Professional Standards Unit.

e.  Supervisors will document any accidental discharge of a department issued or department authorized firearm that does not constitute use of deadly force against another person in Blue Team under *Firearm Discharge*.

f.  Officers will complete an *Incident Report* to document discharge of a firearm related to the killing of a wild or a domesticated animal.

g.  In addition to the *Incident Report*, Supervisors will document Use of Force cases in Blue Team where an animal is killed while attacking or actively threatening a person.

*1.3.4*

H.  USE OF OTHER WEAPONS

1.  Only those officers who have been trained in the proper use of such weapons will be authorized to use them.

2.  Chemical agents, such as CS gas and chemical smoke may be used by an officer whether or not the officer effects an arrest for purposes of:

a.  crowd control

b.  concealment

c.  the evacuation of a barricaded subject.

3.  Flash/sound devices may be used by an officer, whether or not the officer effects an arrest, for creating a diversion which is intended to conceal a specific tactical maneuver from the suspect.

4.  An officer's use of any item not specifically mentioned within this directive as a weapon will be for defensive purposes only.

{00447871.DOC  }

EXHIBIT B
PageID# 278

*1.3.4 / 41.1.4 A*

I. <u>USE OF POLICE CANINES</u>

1. Use of police canines will be in accordance with guidelines set forth in directive PD-0706 (*Departmental Canine Teams*).

2. Police canines may be used as a means of:

   a. physical restraint and control

   b. apprehending or subduing a person resisting arrest by fleeing or physical actions.

   c. defense of any person

3. Police canines used by the LPD will be trained to utilize force in apprehending and retaining control of persons, until the K9 handler deems it safe to recall or remove the police canine.

4. Officers will be mindful that any use of police canines in which the canine is not under the handler's physical or voice control may potentially be considered a use of deadly force.

5. Police canines will *not* be used for the following:

   a. as a threat to make a person comply with an officer's verbal order when *no physical violence is imminent*

   b. to elicit information from a person

   c. as retaliation for physical or verbal abuse.

J. <u>USE OF TIRE DEFLATION DEVICES</u>

1. Use of tire deflation devices will be in accordance with directive PD-0702 (*Vehicle Pursuit*).

2. Tire deflation devices will be used in a pursuit situation when the pursuing officer or supervisor has reason to believe that the continued movement of the fleeing vehicle will place the driver and/or others in imminent danger of serious bodily harm or death.

K. <u>USE OF FORCE INCIDENT REPORTING</u>

1. Employee duty to report:

EXHIBIT B

a.  Involvement in a use of force incident will not preclude or override an employee's responsibility as a City and Police Department employee to accurately, fully and promptly report work-related activities and observations.

b.  Employees will verbally report incident details:

  1)  to other employees, representatives of other agencies or members of the public as and when necessary to:

    a)  safeguard human life, aid in suspect apprehension, or otherwise further an ongoing investigation; and

    b)  fully cooperate and assist in reporting on an incident deemed likely to give rise to a claim against the City of Lynchburg

  2)  upon direct order of any Lynchburg Police Department supervisory staff member.

c.  Employees will complete all procedurally-required written administrative reports, statements, memoranda, etc on supervisory direction as soon as practical after incident occurrence.

d.  An employee who deliberately refuses to provide verbal and/or written incident information when ordered to do so:

  1)  will be subject to disciplinary action, up to and including termination of employment, for insubordination

  2)  may have City insurance coverage summarily limited or terminated.

e.  The on-scene supervisor will assign another employee to complete any required report that the involved employee is physically unable to complete in a timely manner.

f.  The on-scene supervisor will complete any required administrative report that the involved employee is physically unable to complete in a timely manner.

g.  In cases where such reports were completed for an incapacitated employee, that employee will review the reports for accuracy as soon as practical thereafter, and will correct any errors noted through filing a supplement to the original report.

*1.3.6 A & C*

2.  Supervisors will document a *Use of Force* incident in Blue Team to provide internal administrative documentation of incidents involving:

EXHIBIT B Page 12 of 18    **PD19-0602**

      a.   use of chemical spray

      b.   deployment of the Taser

      c.   use of physical force in any situation involving:

         1)   visible injury, or complaint of injury, to a suspect or arrestee

         2)   visible injury, or complaint of injury, to an involved officer

         3)   damage to non-department owned property resulting from use of physical force to apprehend, restrain or control a suspect or arrestee

            a)   All officers having any form of physical contact with a suspect or arrestee under the circumstances specified above will notify their supervisor, who will document the officers' actions as a *Use of Force* in Blue Team. *All officers involved in the application of force…..Other officers assisting post application of force will be listed as Witnesses.*

            b)   Use of force to enter a structure or vehicle will be documented by means of an incident report rather than *Use of Force* reporting through Blue Team.

      d.   use of the police baton

      e.   use of the single launcher

      f.   certain discharges of firearms (see III.F.7 *Reporting discharge of firearms*).

      g.   use of other weapons

*1.3.6 B*

      h.   use of police canines in which the canine contacts a person

      i.   use of tire deflation devices

      j.   any use of force that either results in, or is alleged to have resulted in, death or serious physical injury to a person.

      k.   any situation that a supervisor directs be documented by a use of force form.

    3.   Officers will report to a supervisor a factual account of the type and level of force utilized by LPD officers in any use of force situation as specified above: **officers will not include information derived from either personal opinion or speculation**.

{00447871.DOC  }



4.  Officers will complete a report to document any observed use of force by non-LPD personnel in the following situations:

     a.  other law enforcement agencies assisting LPD officers

     b.  LPD officers assisting other law enforcement agencies

     c.  assisting or being assisted by private sector employees (security agencies, loss prevention, etc.)

     d.  citizens assisting officers.

*1.3.7*

5.  The City Attorney has requested that *Use of Force* documentation be considered as *Attorney Work Product* documentation, as this information is used to assist the City Attorney in evaluating any related claims against the City.

6.  Attorney Work Product documents will be handled with the utmost confidentiality, and will <u>not</u>:

     a.  be copied without prior authorization by the Chief of Police

     b.  be forwarded through the report review process

     c.  be filed within the Records Unit

     d.  be discussed with or delivered to anyone other than those persons named in this directive without prior authorization by the Chief of Police.

7.  Supplementary and follow-up information to a *Use of Force* incident will be:

     a.  completed in *Memorandum* format

     b.  attached to the *Use of Force* investigation in Blue Team.

8.  Incident reports and supplement reports related to the use of force will not be considered as Attorney Work Product documentation.

     a.  Incident reports and supplement reports should not include detailed information concerning an officer's use of force.

     b.  For purposes of courtroom testimony, Incident Reports and supplement reports should include detailed, factual information to establish all elements of the related crime and to describe suspect actions that led to an officer's use of force.

{00447871.DOC }

c.  Incident Reports and supplement reports will be submitted to the Report Review Office for classification.

d.  Incident Reports and supplement reports will be filed by control number according to Records Unit procedure.

e.  Copies of Incident Reports and supplement reports will be attached to the *Use of Force* investigation as supplemental information in Blue Team.

L.  <u>USE OF FORCE INCIDENT INVESTIGATION</u>

1.  Supervisory investigation of use of force incidents will be conducted in accordance with guidelines set forth within directive PD1601 (*Internal Investigations*).

    a.  All investigations will be completed by a Sergeant, Lieutenant or Captain.

    b.  All completed use of force investigations will be reviewed by a Lieutenant not involved in the incident or the use of force investigation.

*1.3.7*

2.  The supervisor investigating a use of force will:

    a.  verify the information related on the *Use of Force*

    b.  factually complete through Blue Team reporting the *Use of Force* investigation with a summary of the facts of the incident

    c.  sign, date, and submit the completed *Use of Force* investigation as soon as practical (and within 42 days unless formal, written approval is obtained from the Chief of Police) of the use of force incident.

        1)  Each supervisory level will:

            a)  review the *Use of Force* investigation and any related investigatory materials for completeness and policy compliance for the act reported through Blue Team

            b.  ensure that the investigatory documentation accurately reflects the action(s) taken by the suspect(s) and involved officer(s)

            c)  sign and date the investigation on approval

            d)  submit the investigation to the next level in the chain of command through Blue Team.

{00447871.DOC  }

EXHIBIT B

*1.3.6 B*

M. <u>USE OF FORCE RESULTING IN DEATH, SERIOUS INJURY, OR SIGNIFICANT PROPERTY DAMAGE</u>

1.  At any time that an officer's use of force (on or off duty) results in, or is alleged to have resulted in, the death of any person, the serious physical injury of any person, significant damage to non-LPD property, or other circumstances or effects deemed likely to foster significant public interest or concern, that officer will be responsible for:

    a.  immediately notifying the senior on-duty supervisor

    b.  securing the incident scene and safeguarding persons present until relieved after the arrival of assisting officers

    c.  preserving, as practical, any firearm or other weapon used from loss or tampering.

2.  If the use of force incident occurs in another jurisdiction, the employee shall immediately notify the local agency having law enforcement jurisdiction prior to making LPD supervisory notification.

3.  The involved officer will relinquish to a supervisory officer, once the incident scene is secured:

    a.  any discharged firearm, the firearm holster (in cases of accidental discharge), and all ammunition in the officer's possession

        1)  An officers' handgun will not be relinquished on the scene of an incident and the weapon will only be handled or manipulated by the investigating agency or Professional Standards Unit personnel.

    b.  any weapon used by the officer

        1)  If the weapon is discarded on scene, it should remain in place for crime scene processing.

    c.  any equipment, clothing, or other items deemed necessary by the responding supervisor.

        1)  Officers should remain clothed until pictures can be taken of the officers by the investigating agency.  Exception is if an officer is exposed to a bio-hazard, then the officers' clothing should be removed expeditiously when arriving at the police department.

{00447871.DOC  }

4.  Such use of force situations will be responded to, handled and reported according to procedures set forth within PD-0403 (*Significant Incident Management*).

5.  An officer who has relinquished a weapon utilized in a use of force incident will be issued a replacement weapon as soon as practical.

    a.  The immediate supervisor of any officer issued a replacement firearm will be responsible for scheduling the officer to qualify with the replacement firearm:

        1)  as soon as practical, and

        2)  prior to the officer's return to duty.

*1.3.8*

6.  Pending conclusion of use of force investigation(s), any employee whose actions or use of force resulted in death or serious physical injury will be relieved from the line of duty through either:

    a.  modified duty, or

    b.  administrative leave with pay.

N.  <u>MANDATORY COUNSELING</u>

1.  An employee who is directly involved in a use of force incident resulting in death or serious physical injury to a person will report for counseling to a mental health professional selected by the department.

    a.  Such counseling is intended to assist in the prevention of any adverse emotional effect resulting from the officer's experience.

    b.  Such counseling is made *mandatory* to ensure that the officer receives some form of timely assistance.

2.  The number of mandatory sessions attended by an officer will be decided by the Chief of Police, in conjunction with the recommendation of the assigned mental health professional.

    a.  Mandatory session(s) will be scheduled during the officer's duty time, if practical; otherwise the department will pay overtime or grant compensatory leave earned.

    b.  Payment for all mandatory sessions will be made by the department.

3.  The affected officer's Deputy Chief will be responsible for:

{00447871.DOC }

EXHIBIT B

a.   selecting a mental health professional qualified to meet the perceived need and recommending him to the Chief of Police for approval

b.   scheduling a timely appointment with the approved mental health professional

c.   notifying the officer in writing of the scheduled appointment and the mental health professional selected.

4.   Any non-mandatory sessions arranged by an officer will be the financial responsibility of that officer.

*1.3.13 / 1.3.11*

O.   <u>ANALYSIS AND TRAINING</u>

1.   At least annually, all officers will receive department-approved training on use of force.

   a.   Training may include practical exams, proficiency exercises or tests that officers will be required to pass covering the training material.

   b.   Information related to exams, exercises, and tests will be maintained by the Personnel & Training Unit.

2.   The Field Operations Bureau Captain will be responsible for conducting an annual analysis of use of force incidents occurring within each calendar year.

   a.   This analysis will:

      1)   examine use of force incidents, policies and practices.

      2)   be limited to use of force incidents documented by means of a *Use of Force* form and IBR reports documenting the discharging of firearms for the purpose of killing wild or domesticated animals.

      3)   serve as a means of identifying needs for supplementary training, equipment or procedural changes.

   b.   This analysis should identify:

      1)   dates and times of incidents

      2)   types of encounters resulting in force

      3)   trends, or patterns related to race, age, and gender of subjects involved

{00447871.DOC }

EXHIBIT B

4)   trends or patterns resulting in injury to any person including employees

5)   the impact of the findings on policies, practices, and training

c.   The Chief of Police will be notified of the annual analysis findings.

*Original Signed*

_____

Ryan M. Zuidema
Chief of Police

August 1, 2019

_____

Date

{00447871.DOC  }