Mark S. Dunston
PO Box 1706
Ocean Springs, MS 39566
(228) 348.1189

M. Paul Valois, Esq.
7601 Timberlake Road
Lynchburg, VA 24502

September 10, 2024

Mr. Valois,

As requested, I have reviewed the materials you provided me in reference to Shanta Brown v. City of Lynchburg, VA. After reviewing those materials, I have reached certain opinions and offer the following:

1.  Qualifications

    -   I am a certified law enforcement officer and trainer, beginning my career in law enforcement in 1984.
    -   In my career I have served as a patrol officer, a narcotics detective, academy trainer, academy director, SWAT team member, SWAT commander, sergeant, captain, and chief of police.
    -   As a law enforcement trainer, I have trained thousands of federal, state, and local law enforcement officers from every state in the United States, the territories of Puerto Rico and the U.S. Virgin Islands, and internationally, including Hong Kong, China, Canada and Brazil.
    -   I have trained law enforcement officers in person and through training media including television, video and written word on topics including police use of force, officer survival, and arrest procedures.
    -   As a law enforcement executive, I have written, enacted and enforced numerous policies and procedures relative to the operation of a law enforcement agency.
    -   I am a graduate of the 191st session of the FBI National Academy.
    -   I am a graduate of the 20th Senior Management Institute for Police.
    -   I have authored numerous articles published in national law enforcement periodicals.
    -   I am the author of one book and contributing author to three additional books on law enforcement.
    -   My work has been cited in other authors' works.
    -   I have conducted, delivered and published research on issues concerning police use of force and officer survival.

1

- I have lectured and delivered research findings at national and international professional peer association conferences.
- I have testified in both state and federal court districts in five states on the topics of police and security procedures, use of force, and policy.
- I have included my curriculum vitae and fee schedule with this document

2. Previous Testimony Last Four Years

- Wroblewski v. Tyler and Oliver (Tunica County Sheriff, MS)
- Harrion v. City of Jackson, MS
- King v Beau Rivage Casino
- Paillette v. Morgan City, LA
- Tenessen v. City of Hattiesburg, MS
- Jones v. Fort Meyers, FL
- Lambert v. Satsuma, AL
- Renfroe v. Madison County, MS
- Brooks v. Tupelo, MS
- Booker v Lynchburg, VA
- Teel v. Lozada, FL
- DeJesus v. Osceola Co. FL
- Linares v Southaven, MS
- Trabucco v. DeSoto County (MS)

3. Material Reviewed

- Complaint
- Initial Disclosures
- Oppositions to Motion to Dismiss
- Lynchburg PD Body Cam and Dash Cam Videos

4. Opinion

I was asked to review the above listed material and offer my opinion on the actions of Lynchburg, VA Police Department (LPD) officers involved with the arrest of Ms. Brown and her daughter Aquasha Sandidge on April 28, 2020. Having reviewed the material sent to me to date, I employed comparative methodology in determining my opinions relating to the plaintiff's claims and in measuring the officers' actions. This method of comparing the officers' actions against that which is generally accepted practice and training in the law enforcement profession is a common and consistently applied method when evaluating a law enforcement officer's action. I have also relied upon my thirty-nine plus years of law enforcement, my training, experience, and education, as well as my having trained more than forty thousand law enforcement officers and law enforcement executives from every state in the United States as well as other countries utilizing well known and regarded training programs, and my personal knowledge of the training and operational standards in the law enforcement profession.

2

Therefore, all of my opinions are within a reasonable degree of professional certainty and do not constitute any inference on matters to be decided by the trier of fact.

While her son, Terron Pannel, was being arrested following a traffic stop by LPD Officer Zachary Miller for operating a vehicle without a front license plate, Ms. Brown arrived at the scene, which was in the parking lot of her apartment.  Throughout her interaction with Ms. Brown, back-up officer Terieka Groom continually demonstrated a professional approach.  Officer Groom utilized de-escalation techniques commonly trained in the law enforcement profession.  At one point, Officer Z. Miller asked Officer Groom to seek consent to search the vehicle.  Officer Groom asked Mr. Pannel for consent, to which he declined.  Officer Groom advised Officer Z. Miller that consent had been denied.  Officer Z. Miller then appeared to have purposely delayed the conclusion of the traffic stop in order for there to be enough time for K9 Officer Seth Reed to arrive to conduct a K9 sweep of the vehicle.  Whether or not the delay was excessive is a legal conclusion and a matter for the trier of fact to determine.

However, despite Officer Groom's de-escalation actions, other LPD officers did not attempt to de-escalate the situation involving an upset mother who had watched her son being taken to the ground.  Instead of following Officer Groom's example, officers escalated the situation resulting in using force on Ms. Brown and Ms. Sandidge.  Throughout the law enforcement profession de-escalation is the goal and when one officer is doing a good job with that practice, other officers should not thwart those efforts by escalating the situation through aggressiveness or with force.

After Ms. Brown attempted to approach her son on the ground in the parking lot, Officer Z. Miller shoved Ms. Brown away.  Officer Z. Miller initially stated to his supervisor that he had not been assaulted but would later state Ms. Brown assaulted him.  Officer Robbin Miller and Officer Reed also stated that Ms. Brown committed assault on an officer.  This is not apparent on the video.

Giving false official information is considered, at minimum, an ethics violation based on best practices and standards from several law enforcement policy and training associations including the International Association of Chiefs of Police (IACP).  Officer Z. Miller's statement of having been assaulted when he had not would be a violation of ethical behavior. Giving false testimony is a crime.  If Officer Z. Miller in fact gave false testimony, that would be a matter for the trier of fact to determine.  The same opinion stands for Officer Reed and Officer R. Miller.  From a professional perspective, as a police chief, I would not tolerate such behavior and would not have such an officer in my agency. Law enforcement executives have been trained on two seminal United States Supreme Court cases, <u>Brady v. Maryland</u> 373 U.S. 83 (1963) and <u>Giglio v. United States</u> 450 U.S. 150 (1972) both of which practically prohibit a police chief from allowing officers who have been known to give false information to participate in criminal investigations.

After Officer Groom moved Ms. Brown back to the apartment building entrance, Officer Reed instructed officers to handcuff Ms. Brown and Ms. Sandidge.  While doing

3



so, Officer Z. Miller performed a physical takedown on Ms. Brown.  Shortly after, Officer R. Miller arrived on scene and immediately handcuffed Ms. Sandidge.  Based on the video, it sounded at the time that Officer Groom was controlling Ms. Brown and Ms. Sandidge with verbal tactics and de-escalation tactics.  Both women were placed in patrol vehicles for transport.

Officers throughout the law enforcement profession are consistently trained on when the use of force may be deployed.  Primarily, officers are trained on the use of force standards from two seminal United States Supreme Court (SCOTUS) cases.  Those cases are Tennessee v. Garner, *471 US 1 (1985)*, and Graham v. Connor, *490 US 386 (1989)*.  I presented the guidance and conclusions from those cases in the training I have conducted throughout the nation to law enforcement officers and law enforcement executives.

As a law enforcement executive, I have frequently been required to weigh an officer's use of force and make a determination as to whether or not the officer's actions were acceptable from what we have been instructed by the courts and acceptable from a policy perspective. As a trainer, I have reviewed numerous incidents similar to this incident for the purpose of determining whether or not the officer's actions complied with training standards.  I also instruct other law enforcement trainers and executives on how to measure these incidents using the standards applied by the court in Garner and Graham.  After reviewing the documentation in this case, it is my opinion that officers Z. Miller, R. Miller and Reed acted in a manner not consistent with what I and other trainers have instructed throughout the law enforcement profession.

I base my opinions on information provided to me to date, on references in my report and on current, generally accepted training and operational procedures in the law enforcement profession, and my experience and training as a law enforcement officer, executive, and international trainer.  I currently receive $250 per hour for my time.  My CV and fee schedule are attached to this report.  If I am provided additional information concerning this case, I may be able to provide further opinions.

Professionally,

Mark S. Dunston

4

# Mark S. Dunston
### PO Box 1706   Ocean Springs, MS 39566-1706   228 348-1189

**Current Position:**   Chief of Police, (Retired) Ocean Springs (MS) PD
Ocean Springs, MS  USA

## Professional Associations and Positions:

**International Law Enforcement Educators and Trainers Association *(ILEETA)***
-   Member 2006 – 2010

**American Society of Law Enforcement Trainers *(ASLET)***
-   Member 1988 - 2004
-   State Director (MS) 1990 - 1995
-   Elected to Board of Directors 1995 - 1999

**National Law Enforcement Credentialing Board *(NLECB)***
-   Job Task Analysis Committee 1995 - 1996
-   Test Development Committee 1996

**Police Marksman Magazine National Advisory Board**
-   Member of Board 1991 - 2000

**International Association for Identification *(IAI)***
-   Certified Senior Crime Scene Analyst 1992

**FBI National Academy Associates** 1997 to present

**MS Association of Chiefs of Police** 2007 to present
-   Chair, Training Committee 2016 to present

**ASIS International** 2010 to present

**American Board for Certification in Homeland Security (ABCHS)** 2012 to present
-   CHS-I Certification

**Texas Commission on Law Enforcement (TCOLE)**
-   PoliceOne Advisory Board Member 2015 to 2019

**International Association of Chiefs of Police IACP 2015 to present**
-   MS State Associations of Chiefs of Police SACOP Delegate 2019 - 2022

## Education and Leadership Awards:

Graduate, 20th Session
Police Executive Research Forum/ Harvard University Kennedy School of Government
Senior Management Institute, Boston, MA 1997

Graduate, 191st Session
FBI National Academy, Quantico, VA 1997

Leadership in Criminal Justice Training Award, *PPCT International Trainer Conference, 1998*

### Training and Instructor Certifications:
State of Mississippi, Peace Officer Standards and Training (POST) Professional Instructor Certification History:
- Use of Force/Liability
- Firearms
- Arrest Techniques
- Subject Control/Defensive Tactics
- Impact Weapons
- Criminal Investigations
- Law Enforcement Driving
- Police Officers' Rights

### PPCT Management Systems Instructor Trainer History
- Use of Force/Subject Control Instructor Trainer
- Impact Weapons Instructor Trainer
- Pressure Point Control Instructor Trainer
- Spontaneous Knife Defense Instructor Trainer
- Violent Patient Management Instructor Trainer
- Close Quarter Combat Instructor

### Firearms and Lethal Force Instructor Training History
- Federal L.E. Training Center Firearms Instructor, SAPP, FIMWITP
- NRA Firearms Instructor
- Glock Firearms Instructor, Armorer
- NMLETC Firearms Course Developer
- Talon International Applegate Shooting Method Instructor

### Other Instructor Training History
- TASER Instructor
- Police Defensive and Pursuit Driving Instructor (FLETC)
- Counter Terrorism/Assault Driving Instructor (FLETC)
- Instructor Development (FLETC Behavioral Sciences)
- OC Agent Use of Force Instructor/Trainer
- ASP Instructor, Instructor Trainer 1990-1992
- Monadnock PR-24 Instructor 1986-1989

### Professional Development Training History
- ASLET Conference 1998-2006
- ILEETA Conference 2007
- PPCT Management Systems International Conference 1993-2002
- MS Assoc Chiefs of Police Training Conference 1996, 2007-2023
- FBINAA Training Conference (MS) 2007-2022
- Chicago Kent Law School Section 1983 Litigation Conference 2008
- TASER Use of Force, Risk Management and Legal Strategies 2011, 2013
- FBINAA International Conf. 2010
- IACP International Conference 2019

## Publications:

### Books and Monographs

- Street Signs © 1992, Performance Dimensions Publishing, *An identification guide on gangs and criminal symbols.*

6

- <u>Total Survival</u> © 1993, Performance Dimensions Publishing, *Author of Chapter 15, Reading the Streets*
- Featured author in <u>The Best of The Police Marksman</u>, Vol. II,  © 2002
- Content editor, <u>Sharpening the Warrior's Edge</u>, Siddle , © 1998
- Contributing Editor, <u>On Combat</u>, Grossman, © 2004
- <u>Critical Issues in Use of Force, What Law Enforcement Executives Should Know</u> © 2011 , *Author of Chapter 3 Use of Force Policy*
   IL Law Enforcement Executive Forum and Western IL University
- <u>Guidelines for Investigating Officer-Involved Shootings, Arrest-Related Deaths, and Deaths in Custody</u> © 2018, *Co-Author, Chapter 6, Officer-Involved Incident Investigation Guidelines*

**Video and Televised Training**

**Individual Video**

- "Gangs and Identification", LE Net, © 1991
- "Street Signs", Performance Dimensions Publishing, © 1992  A*ccompanying video to book.*
- "Officer Survival Tips", Performance Dimensions  Publishing, © 1994
- "Leadership Issues", Performance Dimensions Publishing © 2000

**Law Enforcement Television Network** *(LETN)*

- Several training programs for LETN 1994 - 2009
- Use of Force content expert for network 1996 – 2003
- Co-Hosted "Command Center" Management Series 1997- 1999
- Regular panelist, Executive Forum 2000- 2001

**Professional Security Television Network** *(PSTN)*

- Gangs and Their Signs, 1994
- Use of Force, 1995
- Security and Security Management Issues, 1994-2000
- Officer Survival Searches and Frisks, 2009
- Officer Survival Handcuffing Tactics, 2009

**PULSE Emergency Medicine TV Network**

- Controlling Assaultive Patients 1999

**POLICEONE.COM Video**

- Active Shooter Response Preparation and Tactics 2008
- Leadership Paradox 2008
- Use of Force/4th Amendment Issues 2008

**Mass Media Appearances (Content Expert)**

- CBS News Louisville, KY
- CBS News San Antonio, TX
- FOX News Dallas, TX
- Crime Line with Ed Nowicki (Nationally Syndicated Radio Program)

7

**Research Papers Delivered**

- "Basic Training Needs Assessment" *MS Assoc. of Chiefs of Police 2017*
- "Impact Weapon Training Analysis" *Delivered to MS BLEOST and Academy Directors, 1993*
- "Use of Force Policy Considerations on OC Agent Selection"
   *Distributed by MS Municipal Services Risk Mgt., 1993*
- "Physical Training Standards" *Delivered to MS BLEOST, 1993*
- "Analysis of BLEOST Physical Training Standards" *Delivered to MS BLEOST, 1995*
- "Ground Fighting and Assaults on Police Officers"
   *Delivered to PPCT International Conference, 2000*
- "Ground Fighting and Assaults on Police Officers"
   *Delivered to the ASLET Conference, Orlando, F, 2000*
- "Pursuit Policy in MS Police Agencies, The "Brister Effect", *MACP 2010*

**Periodicals and Professional Journals**

- Several articles on law enforcement topics for:
   - *The Police Marksman Magazine*
   - *Police Magazine*
   - *The Journal of the American Society of Law Enforcement Trainers (ASLET)*
   - *ITOA News (Illinois Tactical Officers Association)*

- Most Recent Publications:
   - Calibre Press Street Survival Textbook, "Critical History", © 2003
   - Police Marksman Magazine, "Ground Assaults on Officers", © December 2004
   - Litigation Body Armor: Developing Sound Pursuit and Use of Force Protocol © 2010

**Internet Publications and Training**

- Training Section for Criminal Justice Training Network *"Search, Seizure and Arrest Issues"* 1998
- Policy Issue for OFFICERNET.COM, "*A Little Policy Never Hurt Anyone*", 2000
- Calibre Press Newsline *"Critical History, A Review of Officer Survival History"* 2003

## Training Conducted:

**Basic Level Law Enforcement Training and Lectures**

- MS State Academy
- University of Southern MS/Harrison Co SO Academy
- Hinds Community College, Jackson, MS
- No. FL Comm. College FL
- Greater Jackson County Law Enforcement Training Consortium
- Palace Casino Resort Security Risk Management, Biloxi, MS
- Margaritaville Casino Security, Biloxi, MS
- Approx. 10,000 officers annually for Calibre Press Street Survival Seminar *(2000-2003)*

**Instructor Level Training/Lectures**

   *Several, including:*
- National Nuclear Security Administration (United States)
- Cuiaba, Brazil (AG's office, Federal Police, Military Police)

8

- Rondonopolis, Brazil (AG's office, Federal Police, MP)
- St. Croix/St. Thomas, US Virgin Islands Police
- Hong Kong, China Correctional Services Staff Training Institute
- US Fish & Wildlife, Federal Law Enforcement Training Center
- US Park Service Special Operations Ranger School
- Honolulu PD Academy
- New Orleans PD Academy
- Jefferson Parish, LA Academy
- Jackson, MS PD Academy
- East Texas Police Academy
- United States Armed Forces Units *(all branches)*
- United States Department of Defense
- United States Coast Guard TACLETS, Miami, FL
- Hard Rock Casino Biloxi Security Management/Risk Management
- Minot, ND PD and Surrounding Agencies

**Peer Conference Presentations**

- MS Municipal Risk Management for Law Enforcement Executives Ridgeland, MS 2018
- MS Municipal Risk Management for Law Enforcement Executives Vicksburg, MS 2017
- MS Municipal Risk Management for Law Enforcement Executives Oxford, MS 2017
- MS Assoc. of Chiefs of Police, 2016 Conference, Risk Mgt. for Law Enforcement Executives
- MS Municipal Risk Management for Law Enforcement Executives Grenada, MS 2015
- MS Municipal Risk Management for Law Enforcement Executives Hattiesburg, MS 2015
- Valdosta State University Chiefs' Conference, GA 2014
- CLEAT Leadership Conference, Austin, TX 2013
- Western IL University, Executive Institute, Use of Force Executive Summit 2010
- ASLET 2006, Albuquerque, NM Keynote Speaker
- ASLET 2005, Jacksonville, FL, Served on an expert panel for use of force training issues.
- ASLET 2001, Orlando, FL, Delivered presentation on Officer Survival and Use of Force
- ASLET 1995, Anchorage, AK, Delivered presentation on Survival Learning Theory
- ASLET 1994, Washington, DC, Delivered Stress Response Research Instruction
- MS Assoc. for Professionals in Corrections, 1990 Management of Use of Force
- MS DARE Officers Conference, 1994, Gangs
- PPCT Management International 1995, Stress Response Training Issues
- PPCT Management International 1997, Skills for Performance in Off. Surv. Training
- PPCT Management International 2000, Stress Response Training Issues
- MS Assoc. of Chiefs of Police, 1997, Training on a Budget

## Expert Testimony and Depositions last Four Years:

- Wroblewski v. Tyler and Oliver (Tunica County Sheriff, MS)
- Harrion v. City of Jackson, MS
- King v Beau Rivage Casino
- Paillette v. Morgan City, LA
- Tenessen v. City of Hattiesburg, MS
- Jones v. Fort Meyers, FL
- Lambert v. Satsuma, AL
- Renfroe v. Madison County, MS
- Brooks v. Tupelo, MS
- Booker v Lynchburg, VA
- DeJesus v Osceola County, FL
- Linares v Southaven, MS
- Trabucco v. DeSoto County (MS)

9



## Employment Credentials:

| | | |
|---|---|---|
| - | **March 2015 – September 2023** | Chief of Police<br>Ocean Springs, MS Police Department |
| - | **August 2007 – March 2015** | Deputy Chief of Police<br>Ocean Springs, MS Police Department |
| - | **July 2003 – August 2007** | Captain, Training and Standards<br>Ocean Springs, MS Police Department |
| - | **March 2000 – December 2003**<br>and October 2010 – Dec 2012 | Instructor<br>Calibre Press Street Survival Program<br>Dallas, TX (Corporate Office) |
| - | **April 1998 – March 2000** | Training Coordinator/Trainer<br>Mississippi Police Corps<br>University of Southern Mississippi<br>Hattiesburg, MS |
| - | **September 1996 – April 1998**<br>*(Interim July 2001-September 2001)* | Chief of Police<br>City of Long Beach, MS |
| - | **May 1996 - September 1996** | Director of Training/Content Expert,<br>Law Enforcement Television Network<br>Carrollton, TX |
| - | **October 1991 - May 1996** | Director (Captain)<br>North Mississippi Law Enforcement Training Center<br>Commander, Special Operations Group<br>Tupelo Police Department, City of Tupelo, MS |
| - | **September 1989 - October 1991** | Specialized Training Coordinator and Instructor<br>MS Law Enforcement Officers' Training Academy<br>Jackson, MS |
| - | **November 1988 – Sept. 1989** | Police Officer, HRU Team Member<br>City of Panama City Beach, FL |
| - | **May 1985 - November 1988** | Police Officer - Police Sergeant<br>City of Ocean Springs, MS |
| - | **January 1984 - May 1985** | Deputy (Res.) Jackson County SO, Pascagoula, MS |



# Mark S. Dunston
## PO Box 1706
## Ocean Springs, MS 39566-1706 (228) 348-1189

**Litigation Consultant Letter of Agreement/Fee Schedule**

This letter serves as an agreement between _____ (client) and Mark S. Dunston. The client, in retaining the services of Mark S. Dunston, agrees to the following fee schedule and obligations of both parties.

1. Hourly fee for service is $ 250.00 US per hour, with first twenty hours ($5,000.00) paid in advance.
2. Settlement of a case does not warrant a refund of any fees paid.
3. Travel is paid in advance or direct billed to the client by the source, i.e. hotel, airline, etc.
4. Travel will not exceed current reasonable and customary rates (business fare air travel, current government rate mileage, etc.)
5. Deposition is billed at two thousand dollars ($2000.00), paid in advance of deposition testimony.
6. The use of the name Mark S. Dunston in any form indicating that Mark S. Dunston has been retained is to be considered contractual and requires the minimum retainer payment.
7. The fees paid to Mark S. Dunston are for his time. The client will not consider it a payment to influence his opinion or testimony.
8. Any work product requested of Mark S. Dunston will be delivered to the client by the agreed scheduled date.

On behalf of the client, I, _____, agree to the
                                                Print Name
terms as set forth in the above Letter of Agreement and Fee Schedule.


_____              _____
Signature                                   Mark S. Dunston
For the Client


_____ Date