IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

SHANTA LYNETTE BROWN, *et al.*,  )
                                 )
    Plaintiffs,           )
                                 )
v.                               )     Civil Action: 6:23cv00054
                                 )
THE CITY OF LYNCHBURG, *et al.*, )
                                 )
    Defendants.           )

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TRIAL TESTIMONY OF MARK S. DUNSTON

Defendants City of Lynchburg, LPD Officer Seth Reed, Deputy Zachary Miller, and LPD Officer Robbin Miller (collectively, "Defendants"), by counsel, move to exclude Mark S. Dunston from testifying as an expert at the trial of this action, in whole or in part, because, for the reasons that follow, his proffered opinions do not satisfy the threshold requirements for admissibility under Federal Rule of Evidence 702 and applicable law.

### INTRODUCTION

On September 12, 2024, Plaintiffs provided to Defendants' counsel their Rule 26 Expert Disclosure, attached hereto as Exhibit A (the "Disclosure"), identifying Chief Mark Dunston ("Dunston") as their expert witness. Plaintiffs disclosed therewith Dunston's report and *curriculum vitae*, attached hereto as Exhibit B (the "Report"). The Disclosure states that Dunston "will testify that excessive force was used against the Plaintiffs and that officers lacked probable cause to detain, arrest and prosecute the Plaintiffs." However—and fortunately for Plaintiffs—Dunston's Report does none of those things. If it had, Dunston would have invaded the province of the jury by stating legal conclusions regarding the very issues that the jury must decide. Instead, Dunston

1

opines—in conclusory fashion—that the defendant officers "acted in a manner not consistent with what [he] and other trainers have instructed throughout the law enforcement profession."

The problem is not with the opinion itself. The problem is that Dunston provides no basis whatsoever for this opinion. Dunston begins his opinion by claiming to have employed a "comparative methodology." However, such a methodology is entirely absent from his Report. Instead, he proceeds in a disjointed fashion from one unrelated point to the next, drawing conclusions which have no bearing to the facts. Not only that, but he gets facts wrong, states legal conclusions (and then tries to walk them back), and fails to apply any semblance of a consistent methodology.

Accordingly, Dunston's opinions and testimony should be excluded as unreliable, confusing and misleading to the jury.

## LAW AND ARGUMENT

### I. Standard of Review

Rule 702 governs the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under this rule, a district court acts as gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow*

*Pharms.*, 509 U.S. 579, 588 (1993).  Though "Rule 702 was intended to liberalize the introduction of relevant expert testimony, '[a district court] must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading.'" *Cooper v. Smith & Nephew, Inc*., 259 F.3d 194, 199 (4th Cir. 2001) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)). In light of this, a district court should exclude expert testimony that "has a greater potential to mislead than to enlighten." *Westberry*, 178 F.3d at 261. A district court has broad latitude in determining the admissibility of expert testimony, and its decision will not be overturned absent an abuse of discretion. *Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 475 (4th Cir. 2005).

To qualify as an expert under Rule 702, a witness must first possess the obligatory "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. While the witness need not have all five of these prerequisites to qualify as an expert, he must have at least one. *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 98. F. Supp. 2d 729, 732 (W.D. Va. 2000).

If a witness qualifies, then his expert testimony is admissible if it satisfies *Daubert*'s two-prong test: "(1) the expert testimony must consist of 'scientific knowledge'—that is, the testimony must be supported by appropriate validation; and (2) the evidence or testimony must 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995) (quoting *Daubert*, 509 U.S. at 592.); *see also Zellers v. NexTech Northeast, LLC*, 533 F. App'x 192, 196 (4th Cir. 2013) (applying same test).[1] The proponent of the expert testimony must establish both prongs by a preponderance of the evidence. *Cooper*, 259 F.3d at 199 (citing *Daubert*, 509 U.S. at 592 n.10).

---

[1] This test and the other standards or principles set forth in *Daubert* apply to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999).

The first prong necessitates a district court to decide whether the reasoning or methodology underlying the expert testimony is reliable. *Westberry*, 178 F.3d at 260. Expert testimony must be based on the witness's scientific, technical, or other specialized knowledge, not on his "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

Moreover, the second prong requires a district court to decide whether the expert testimony will assist the trier of fact and is relevant to the facts at issue. *Daubert*, 509 U.S. at 592; *Westberry*, 178 F.3d at 260. "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986).

"Expert testimony on an ultimate issue is therefore excludable under Rule 702 if it does not aid the jury." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (citing *Kopf v. Skyrm*, 993 F.2d 374, 377-78 (4th Cir. 1993)). "Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination." *Id.* "The best way to determine whether opinion testimony contains legal conclusions, is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* (citations omitted) (internal quotation marks omitted).

## II.     Dunston's proposed testimony is inadmissible.

As an initial matter, the Disclosure states that Dunston will testify that the Defendant officers used excessive force against the Plaintiffs and lacked probable cause to detain, arrest and prosecute them. These are legal conclusions directly addressing some of the very issues that the jury must decide in this case. Dunston would not be permitted to testify thusly at trial. *See Barile*, 286 F.3d at 760. Accordingly, Dunston's proffered testimony ought to be excluded on the grounds that it is not admissible.

**III.    Dunston's Report fatally lacks application of a methodology.**

While Mark S. Dunston is certainly qualified to be an expert in this case, his Report—

which is a mere two pages long—is disjointed, conclusory, and lacks an applied methodology.

Dunston's initial claim to have employed "comparative methodology" in forming his opinion is

not borne out at all in his Report. Instead, Dunston jumps from one unrelated point to the next,

drawing conclusions without explanation and without application to the facts.

Dunston does not explain how the Defendant officers' actions were inconsistent with

standard training, or what that training even was. There are no comparisons of standard training to

the officers' actions in the Report. Dunston does not even say how the Defendant officers should

have acted under the circumstances, other than to sing the praises of non-defendant Officer

Grooms, who herself attempted (unsuccessfully) to repel and restrain Plaintiff Brown prior to her

arrest. Without the application of a methodology, Dunston's opinions are not useful to a jury

because it does not help them understand the evidence or determine a fact at issue.

"[T]he . . . testimony must 'assist the trier of fact to understand the evidence or to determine a fact

in issue.'" *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995) (quoting *Daubert*, 509 U.S.

at 592.)

In short, Dunston does not actually apply his "comparative methodology" to the facts of

the case. "[A]n expert witness must apply the principles and methods reliably to the facts of the

case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (citation and quotation

marks omitted).

**IV.    Dunston gets the facts wrong.**

Dunston also misstates the facts. He writes that "Ms. Brown *attempted to* approach her son on the ground in the parking lot . . . ." (Rep. at 3) (emphasis added). But she clearly did approach, as Officer Zachary Miller had to deflect her with his left arm.

Dunston writes that "Officer Robbin Miller and Officer Reed also stated that Ms. Brown committed assault on an officer." (*Id.*) But that is false. Detective Robbin Miller only took out an assault charge on Aquasha Sandidge.

Dunston writes that "Officer R. Miller arrived on scene and immediately handcuffed Ms. Sandidge." (*Id.* at 4.) That is also inaccurate. Officer Reed's dash cam footage shows Detective Miller arrive on scene and approach Officer Reed, who directed him to help Officers Miller and Grooms with detaining Brown. Detective Miller approached and attempted to assist in handcuffing Brown, and when Sandidge encroached and interfered, he attempted to restrain her arms behind her back, but she resisted and they tripped over Brown and fell backwards to the ground. Officer Miller sprang into action and pushed Sandidge off of Detective Miller, who had injured his elbow in the fall. Officer Miller's body cam footage shows that he assisted Detective Miller with restraining Sandidge and, only then, Detective Miller was able to place Sandidge in handcuffs.

Dunston writes, "Based on the video, it sounded at the time that Officer Groom[s] was controlling Ms. Brown and Ms. Sandidge with verbal tactics and de-escalation tactics." (*Id.*) However, this perception is totally inconsistent with the video evidence. Not only did Officer Grooms also use physical tactics, including pushing Brown back and attempting to restrain her arms behind her back, but Grooms was clearly unsuccessful at controlling Brown, who managed to reach Officers Miller and Reed and assault them while they were busy restraining Pannell on the ground. Furthermore, by the time Detective Miller arrived on scene, Grooms and Miller were

physically restraining and attempting to handcuff Brown. These actions far exceed "verbal tactics" and "de-escalation tactics."

**V.    Dunston states legal conclusions and then attempts to walk them back.**

Dunston's Report contains legal conclusions couched in disclaimers. In one sentence he asserts that Officer Z. Miller claimed to "hav[e] been assaulted when he had not"—which is a legal conclusion that Z. Miller maliciously prosecuted—but then one sentence later acknowledges that "[i]f Officer Z. Miller in fact gave false testimony, that would be a matter for the trier of fact to determine." (Rep. at 3.)

Dunston asserts in one sentence that "Officer Z. Miller then appeared to have purposely delayed the conclusion of the traffic stop"—a legal conclusion that Officer Miller committed an unlawful seizure of Pannell—and then in next sentence states that "[w]hether or not the delay was excessive is a legal conclusion and a matter for the trier of fact to determine." (*Id.*) Not only is this legal opinion irrelevant and misleading to the jury—considering any claim of purposeful delay of the traffic stop would belong to Pannell, who is not a plaintiff here—but it also fails to negate the effect of Dunston's legal conclusion that Miller purposely delayed the conclusion of the traffic stop. A "purposeful" delay is inherently "excessive," considering that "during a stop, a police officer must act reasonably, that is, he must *diligently pursue* the investigation of the justification for the stop" in order to not run afoul of the Fourth Amendment. *United States v. Digiovanni*, 650 F.3d 498, 509 (4th Cir. 2011) (emphasis added) (citation omitted).

**VI.    Dunston provides no foundation for his ultimate opinion.**

Dunston's penultimate paragraph contains the heart of his opinion. Dunston spends the first three sentences of that paragraph establishing that he is qualified to testify on use of force. (Rep. at 4.) In the fourth and final sentence, he writes, "After reviewing the documentation in this case,

7

it is my opinion that officers Z. Miller, R. Miller and Reed acted in a manner not consistent with what I and other trainers have instructed throughout the law enforcement profession." (*Id.*) However, there is no foundation given for that opinion, either within that paragraph or anywhere else in his Report. There is no comparison whatsoever of law enforcement training to the officers' actions. "For expert opinions to be admissible, they must be made within a reasonable degree of . . . certainty, be based on sufficient facts or data, and not be merely subjective and speculative." *Sharpe v. United States*, 230 F.R.D. 452, 460 (E.D. Va. 2005); *see also Clem v. Corbeau*, 98 F. App'x 197, 201 (4th Cir. 2004) (holding that because the "proffered experts did not offer expert testimony providing specialized knowledge on 'obscure skills'" and because "[t]heir only relevant testimony involved opinions, given their particular interpretations of the contested facts," the opinions, "[i]nstead of assisting the jury," "risked 'supplanting a jury's independent exercise of common sense' and its role of determining the facts.")

Accordingly, Dunston's opinions and testimony should be excluded as unreliable, confusing and misleading to the jury. "As the Supreme Court has repeatedly held, 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.'" *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 203 (4th Cir. 2001); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157, 119 S. Ct. 1167, 1179 (1999); *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997).

## CONCLUSION

For the foregoing reasons, Defendants City of Lynchburg, LPD Officer Seth Reed, Deputy Zachary Miller, and LPD Officer Robbin Miller respectfully request that the Court exclude the opinions and testimony of Mark S. Dunston, in whole or in part.

CITY OF LYNCHBURG, SETH REED,
ZACHARY MILLER, and ROBBIN MILLER

By /s/ John R. Fitzgerald
Jim H. Guynn, Jr. (VSB #22299)
John R. Fitzgerald (VSB #98921)
GUYNN WADDELL, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:    540-389-2350
Email: jimg@guynnwaddell.com
         johnf@guynnwaddell.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of November, 2024, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

M. Paul Valois (VSB 72326)
James River Legal Associates
7601 Timberlake Road
Lynchburg, VA 24502
T: 434-845-4529
F: 434-845-8536
Email: mvalois@vbclegal.com
*Counsel for Plaintiffs*

/s/ John R. Fitzgerald
Jim H. Guynn, Jr. (VSB # 22299)
John R. Fitzgerald (VSB # 98921)
GUYNN WADDELL, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:    540-389-2350
Email: JimG@guynnwaddell.com
         JohnF@guynnwaddell.com
*Counsel for Defendants*