IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SHANTA BROWN, *et al*, ) | |
| *Plaintiffs* ) | |
| ) | |
| v. ) | CASE NO. 6:23-cv-00054 |
| ) | |
| CITY OF LYNCHBURG, *et al*, ) | |
| *Defendants*. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TRIAL TESTIMONY OF MARK DUNSTON**

COME NOW the Plaintiffs, Shanta Brown ("BROWN") and Aquasha Sandidge ("SANDIDGE")), by counsel, in opposition to the Motion to Exclude Trial Testimony of Mark Dunston filed by Defendants Reed, Z. Miller and R. Miller (collectively, the "DEFENDANTS:) (ECF 40), to-wit:

**ARGUMENT**

The Defendants seek to exclude the testimony of Chief Dunston at trial and they are correct both that Chief Dunston cannot invade the province of the jury and that he cannot reach purely legal conclusions.  To the extent that any language in the disclosure of his testimony suggests otherwise, it is wrong.  However, Chief Dunston's report was timely disclosed and it speaks for itself.  The methodology he employed restricts his opinion to a comparison between the facts he observed (primarily on bodycam video recordings) and acceptable standards of conduct for police officers, a subject upon which the Defendants concede his well qualified to address.

Indeed, in his report, Chief Dunston wrote: "Officers throughout the law enforcement profession are consistently trained on when the use of force may be deployed. Primarily, officers are trained on the use of force standards from two seminal United States Supreme Court (SCOTUS) cases. Those cases are *Tennessee v. Garner,* 471 US 1 (1985), and *Graham v. Connor,* 490 US 386 (1989)." Chief Dunston concluded that the conduct of the officers he observed was "not consistent with what I and other trainers have instructed throughout the law enforcement profession." This opinion is both admissible and material as it will aid the jury in understanding the role standards play (or are intended to play) in police training.

Similarly, Chief Dunston's opinion with regard to the veracity of the defendant police officers is based on standards promulgated by several law enforcement policy and training associations including the International Association of Chiefs of Police (IACP). Chief Dunston made it clear in his opinion that it was up to the factfinder to assess the veracity of the officers. However, his opinion that "giving false official information is considered, at minimum, an ethics violation based on best practices and standards" is also both admissible and material.

The Defendants quibble with some purported factual errors in Chief Dunston's report, for example, in arguing that Dunston mischaracterizes BROWN'S actions after the police officers slammed her handcuffed son into the pavement when he wrote that she "attempted to approach" her son, instead of writing, as the Defendants seem to wish he did, that she simply "approached" her son. This semantic argument is trivial. Since there was no contact with her son, the determination of whether it is most accurate to say she "attempted to approach" him or whether she "approached" him is a distinction without a material difference.

The Defendants also claim that Dunston's statement in his report that both Seth Reed and Robbin Miller stated that BROWN committed an assault on an officer is false, because it was Zachary Miller, not Robbin Miller, who took out the assault charge on Brown. This misnomer is hardly material to Chief Dunston's opinion.

Finally, the Defendants believe that Chief Dunston's observation that it sounded from the bodycam video recordings that Officer Grooms was engaged in verbal and de-escalation techniques is inconsistent with the Defendants' perception of the recordings. This statement is simply part of Chief Dunston's summary description of his own observations of the instances of use of force by all of the officers. Chief Dunston is certainly capable of testifying as to whether the conduct he observed comported with training standards. To extent any question arises regarding the basis for his observations, the Defendants can address these questions on cross examination.

The Defendants claim that Chief Dunston reached legal conclusions in his opinion before walking them back later. The first claim is that he reached a legal conclusion by writing that Z. Miller stated that he had been assaulted when he had not in fact been assaulted. It should be noted that a jury acquitted BROWN of assaulting Z. Miller, thereby fully justifying the conclusion that BROWN did not in fact assault him. However, Chief Dunston did not actually state such a conclusion. In fact, what he actually wrote was a clearly <u>conditional</u> statement that any claim by Z. Miller "would" be an ethical violation <u>if</u> a trier of fact determined that he did, in fact, make such a statement. It is hardly surprising that the standards do not countenance a lying police officer in the ranks and the jury is entitled to know so.

The Defendants also believe that Chief Dunston reached a legal conclusion when he observed that it "appeared" to him that Z. Miller purposely delayed the traffic stop to call for a drug detection dog, even though Chief Dunston recognized that it was ultimately up to the court to determine if the delay was justified. It is within the realm of common observation to distinguish purposeful behavior from accidental or unintentional conduct. Everybody does it every day. As Justice Oliver Wendell Holmes, Jr. wrote in <u>The Common Law</u>, "Even a dog distinguishes between being stumbled over and being kicked." As an experienced police officer and trainer, Chief Dunston is a position to analyze an officer's delay in dealing with a traffic stop and he has specialized knowledge of the reasons for doing so (or from refraining from doing so) that lie outside the common knowledge. His opinion regarding the delay will aid the jury and should be admitted.

Lastly, the Defendants complain that Chief Dunston's opinions lack a foundation because they believe that Chief Dunston did not adequately tie the officers actions to law enforcement training. However, as noted above, Chief Dunston noted police departments universally train their officers to use force in accord with *Tennessee v. Garner* and *Graham v. Connor,* and that from his observations he concluded that the conduct of the officers fell short of that training.

### CONCLUSION

For all of the above reasons, the Plaintiff pray that the Court overrule the Defendants' Motion to Exclude Trial Testimony of Mark Dunston.

Respectfully submitted,

**SHANTA BROWN and AQUASHA SANDIDGE**
**By Counsel**

<u>/s/ M. Paul Valois</u>
M. Paul Valois, Esquire
Virginia State Bar No. 72326
JAMES RIVER LEGAL ASSOCIATES
7601 Timberlake Road
Lynchburg, Virginia 24502
P (434) 845-4529
F (434) 845-8536
mvalois@vbclegal.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 10th day of December, 2024, I electronically filed the foregoing Memorandum with the Clerk of this Court using the CM/ECF system, which will automatically send notice of this filing to all counsel of record.

<u>/s/ M. Paul Valois</u>