IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **SHANTA BROWN**, *et al*, )<br>  *Plaintiffs* )<br> ) | |
| v. ) | CASE NO. 6:23-cv-00054 |
| ) | |
| **CITY OF LYNCHBURG**, *et al*, )<br>  *Defendants.* ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS REED, Z. MILLER AND R. MILLER'S MOTION FOR SUMMARY JUDGMENT**

COME NOW the Plaintiffs, Shanta Brown ("BROWN") and Aquasha Sandidge ("SANDIDGE")), by counsel, in opposition to the Motion for Summary Judgment filed by Defendants Reed, Z. Miller and R. Miller (collectively, the "DEFENDANTS")(ECF 42), to-wit:

**SUMMARY**

The Defendants' request for summary judgment fails because it relies upon disputed facts and fallacious reasoning. For the sake or brevity and order, this Memorandum will refer to the exhibits filed with the Memorandum in Support of Defendant's Motion for Summary Judgment (ECF 43).

**DISPUTED FACTS**

The following purported facts from the Defendants' Statement of Facts lack evidentiary support and are disputed:

- That Terron Slaughter was a known gang member. Defendant's Memorandum, p. 4

- That BROWN assaulted anyone (contained in the allegation that Officer Grooms "continued to block [BROWN] from assaulting the officers again"). Defendant's Memorandum, p. 6

PAGE 1 OF 8

- That Officer Grooms attempted to detain BROWN but temporarily abandoned her attempt. Defendants' Memorandum, p. 6

## ARGUMENT

DEFENDANTS' arguments for summary judgment are founded upon contested material facts and misstatements of fact and well as false reasoning.

## II.  Z. MILLER AND QUALIFIED IMMUNITY – USE OF FORCE

DEFENDANTS assert that Z. Miller is entitled to qualified immunity because he "only attempted to detain Brown after she has physically assaulted him and Officer Reed and obstructed their arrest and search of Pannell." Defendants' Memorandum, p. 12  However, his contention was disputed by Z. Miller himself in his deposition, when he testified that because did not observe BROWN contact him, the contact he felt could have been accidental or incidental and that his belief that he was assaulted was founded upon his own "speculation".  EXHIBIT 1, pp. 60-61   Of course, BROWN flatly denied assaulting the officers.  EXHIBIT 6., p. 19 Finally, BROWN was acquitted of assault by a jury of her peers. EXHIBIT 18

As for the charge against BROWN of obstructing justice, the question of probable cause demands lawful conduct on the part of officers.  One cannot be guilty of obstructing justice by interfering the illegal conduct of a police officer.  If BROWN's son, Terron Pannell was unlawfully detained, then BROWN did not obstruct justice by protesting at the scene, but in fact furthered justice with her actions.  BROWN testified she was concerned about the stop because Z. Miller called for a K-9 unit.  EXHIBIT 6, p. 16  Z. Miller also acknowledged that he delayed writing the summons for a minute after asking Officer Grooms to obtain consent from Pannell to search and after calling defendant S. Reed to bring a drug detection dog to the scene.  EXHIBIT

<u>1</u>, p. 55   Officer Z. Miller had probable cause to believe that traffic infractions occurred.  He did not have any reasonable and articulable suspicion to believe any other criminal activity was afoot.  He had a hunch that he would find contraband if he searched the car and delayed the traffic stop to call for another officer to obtain consent and for a third officer to bring a drug dog.  This delay in executing the traffic stop rendered Terron Pannell's detention unlawful and so BROWN could not have obstructed the officers in their illegal scheme, as a matter of law.

Furthermore, BROWN merely interceded with her words. Virginia case law is clear that obstruction of justice demands more than just words:

> "To constitute an obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to `obstruct' ordinarily implies opposition or resistance by direct action. . . . It means to obstruct the officer himself not merely to oppose or impede the process with which the officer is armed."

*Ruckman v. Com*, 28 Va. App. 428, 505 S.E.2d 388 (Va. Ct. App. 1998) quoting *Jones v. Commonwealth,* 141 Va. 471, 478-79, 126 S.E. 74, 77 (1925)

The Fourth Circuit has addressed this issue directly:

> "Central to the issue surrounding probable cause is a distinction recognized by the Virginia courts. That is, an obstruction of justice has not occurred 'when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult but does not impede or prevent the officer from performing that task.' See *Ruckman v. Commonwealth*, 505 S.E.2d 388, 389 (1998). Our Court has acknowledged this important dividing line in Virginia law. See *Wilson v. Kittoe*, 337 F.3d 392, 400 (4th Cir. 2003)."

Z. Miller transformed a minor traffic stop into an unlawful detention.  S. Reed transformed an unlawful detention into an imperious, violent and unlawful arrest.  Together, the officers aggravated not just BROWN and SANDIDGE, but many of the residents of the apartment building, as can be seen on the bodycam recordings.  See, <u>EXHIBIT 3</u>  Instead of

ceasing their unlawful conduct, or at least de-escalating the situation, the officers doubled down by falsely arresting BROWN and SANDIDGE. Any use of force during an unlawful arrest is unreasonable and excessive.

Similarly, BROWN's rush to her son, after Z. Miller and S. Reed slammed him, handcuffed, face down into the pavement, did not prevent either officer from doing anything. EXHIBIT 11 at 2:30  Within minutes, Pannell was searched and placed into a patrol car.

Z. Miller is not entitled to qualified immunity because he engaged in an illegal detention, search and arrest of the Plaintiffs in flagrant violation of clearly established law.

## II.  OFFICER REED - QUALIFIED IMMUNITY – USE OF FORCE

The Defendants argue that Reed is entitled to qualified immunity because he did not use force against either Plaintiff.  However, Reed ordered Z. Miller to put the Plaintiffs in handcuffs and, because there was no justification for doing so, any use of force, including that involved in restraining and handcuffing was unreasonable.  Reed is not entitled to qualified immunity.

## III.  QUALIFIED IMMUNITY – UNLAWFUL SEIZURE

The Defendants seek qualified immunity by claiming that they had both probable cause to arrest the Plaintiffs and reasonable and articulable suspicion to believe that the Plaintiffs had committed a crime.  These arguments are amply addressed above.  A properly instructed jury could  easily conclude simply by looking at the video recordings that Terron Pannell was being unlawfully detained because Z. Miller delayed the traffic stop on a mere hunch.  If the jury reaches this conclusion, then the Defendants' arguments in favor of summary judgment fail. Because the material facts are disputed,  and because the video recordings and their own

deposition testimony undermines their arguments, their claims for summary judgment on the excessive force and unlawful detention claims should fail.

## IV.  QUALIFIED IMMUNITY – MALICIOUS PROSECUTION

Without a doubt, the malicious prosecution case against all of the defendant officers is the strongest case. The record is replete with examples of false statements made by the officers to vilify the Plaintiffs and Terron Pannell and to justify the false criminal charges they took against BROWN and SANDIDGE. These include the following:

**ZACHARY MILLER:**

- On his bodycam recording at 18:30, defendant Z. Miller can be heard asking defendant R. Miller if he intended to take out a charge against SANDIDGE for assault. When R. Miller said that he did not intend to do so, Z. Miller stated (at 18:45) that he saw SANDIDGE assault R. Miller.  EXHIBIT 3  However, in his deposition, Z. Miller testified that he did not see what happened to R. Miller.  EXHIBIT 1., p. 64

- At 16:32 on his bodycam recording, Z. Miller reports to his supervisor that he had not been assaulted.  EXHIBIT 3  However, a Z. Miller testified to a magistrate that he had been assaulted in order to obtain the warrants against the Plaintiffs.  EXHIBIT 17

- On S. Reed's bodycam recording at the magistrate's office, Z. Miller can be heard testifying that BROWN attempted to push him and S. Reed.  However, as can be seen on S. Reed's dashcam video recording (Defendant's Exhibit 11), this simply did not occur.

**ROBBIN MILLER:**

- On Z. Miller's bodycam recording at 18:35, R. Miller can heard saying that he did not intend to pursue criminal charges.  EXHIBIT 3  Only after Z. Miller falsely claimed to

have witnessed the assault, did R. Miller seek the charge against SANDIDGE. <u>EXHIBIT 17</u>

**SETH REED**

- At 15:47 on Z Miller's bodycam recording, defendant Seth Reed reported to her supervisor falsely that Terron Pannel had a history of multiple instances of drug distribution.  <u>EXHIBIT 17</u>  This claim is utter false and completely fabricated.

- As seen on Z. Miller's bodycam recording, Reed reported falsely to his supervisor that Terron Pannell has used vulgar and offensive language toward Reed, by purportedly saying "I aint't getting out of the fuckin' car" and "don't fuckin' touch me" to Reed.  As Reed's own bodycam recording plainly demonstrates at around 1:30,  Pannell actually repeatedly and politely said "please don't touch me, sir."  Pannell never used curse words or vulgar language.

- Reed falsely reported to his supervisor that BROWN and SANDIDGE assaulted both him and Z. Miller.  <u>EXHIBIT 3</u> at 1:30  However, his dashcam video recording shows that this is simply not true. <u>EXHIBIT 11</u>

- Reed falsely reported to his supervisor that he directly witnessed either BROWN or SANDIDGE assault R. Miller. The dashcam video shows that Reed could not possibly have made this observation from his vantage point.  Furthermore, Reed testified in his deposition that he did not witness the incident.   <u>EXHIBIT 8</u>, p. 34

It is clear from the video recordings that the defendant officers colluded to create the false narrative that resulted in the criminal charges against BROWN and SANDIDGE and the circumstances are manner in which the officers concocted this false narrative is plain evidence of

malice. Qualified immunity does not operate to protect lying police officers from deliberately and maliciously seeking, obtaining and prosecuting false criminal charges.

The Defendants rely on an unpublished case, *Nicholas v. Wal-Mart Stores, Inc*. 33 F. App'x 61 (4th Cir. 2002), to argue that the *nolle prosequi* of SANDIDGE's case does not prove that the criminal proceedings terminated in her favor. This reliance is misplaced, because Nicholas interprets South Carolina law, not Virginia law:

> "In *Nicholas,* the Fourth Circuit "predict [ed]" that the South Carolina Supreme Court would find that plaintiffs asserting a claim for malicious prosecution have the *affirmative burden* of proving that the *nolle prosequi* was in fact entered under circumstances which imply or are consistent with innocence of the accused. *Nicholas, supra,* 33 Fed.Appx. at 64–65. *Nicholas,* is, however, an *unpublished* Fourth Circuit case interpreting *South Carolina law,*27 *predicting* what the *South Carolina* Supreme Court would hold. *Nicholas,* therefore, is in no way binding on this Court, and the Court does not find it persuasive in the least as to Virginia law."

*Bennett v. R & L Carriers and Services, LLC, et a*l., 744 F.Supp.2d 494 (E.D.Va 2010)

Virginia law has recognized for more than 100 years that a *nolle prosequi* is a favorable termination that can sustain an action for malicious prosecution. *Graves v. Scott, et al*, 104 Va. 372, 51 S.E. 821 (1905)

**V. THE STATE CLAIMS**

As the Defendants acknowledge, the Plaintiff's state claims "rise and fall" with the federal claims. The Defendants correctly note that Virginia has a tougher standard for malicious prosecution (by actually requiring a demonstration of malice) than the federal courts demand. However, the conduct of the officers in fabricating the charges, coupled with the manner in which they conducted themselves at the scene could easily convince a reasonable and properly instructed jury of their plain malice. The state claims should survive summary judgment.

## CONCLUSION

For all of the above-stated reasons, the Plaintiff pray that the Court overrule and deny the Defendant's Motion for Summary Judgment.

Respectfully submitted,

**SHANTA BROWN and AQUASHA SANDIDGE**
**By Counsel**

/s/ M. Paul Valois
M. Paul Valois, Esquire
Virginia State Bar No. 72326
JAMES RIVER LEGAL ASSOCIATES
7601 Timberlake Road
Lynchburg, Virginia 24502
P (434) 845-4529
F (434) 845-8536
mvalois@vbclegal.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2024, I electronically filed the foregoing Memorandum with the Clerk of this Court using the CM/ECF system, which will automatically send notice of this filing to all counsel of record.

/s/ M. Paul Valois