IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SHANTA LYNETTE BROWN, <br> and <br> AQUASHA SANDIDGE, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF LYNCHBURG, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action: 6:23cv00054 <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS REED, Z. MILLER, AND R. MILLER'S REPLY BRIEF
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Seth Reed, Zachary Miller, and Robbin Miller (collectively, the "Officers"), by counsel, respectfully submit this reply brief in support of their motion for summary judgment.

ARGUMENT

**I.     There are no genuine disputes of material fact.**

Plaintiffs argue there are disputed material facts in the Officers' statement of facts from their memorandum in support of their motion for summary judgment (ECF 43). To the contrary, these facts are either not genuinely in dispute or they are immaterial to the dispositive issues of this case.

Whether Terron Pannell was a known gang member[1] is not a genuine dispute because Defendants did not assert that Terron Pannell was a known gang member. They asserted that Officer Miller told Officer Reed that Pannell was a known gang member, which can be clearly heard in Officer Miller's body camera footage. Regardless, whether Terron Pannell was in fact a

---

[1] Although Plaintiffs dispute that "Terron Slaughter" was a known gang member, Defendants assume they are referring to Terron Pannell by another last name or alias.

1

gang member is immaterial to whether the Officers violated Plaintiffs' constitutional rights. Terron Pannell is not a plaintiff here.

Defendants acknowledge that whether Brown assaulted the officers is disputed and will rephrase the disputed statement of fact, "from assaulting the officers again," to "from approaching, making contact with, and interfering with the officers again." This characterization of Brown's observable actions cannot reasonably be disputed. Brown did approach, she did make contact with Officer Miller, and she did interfere with the officers in their attempts to control Pannell.

Finally, whether Officer Grooms attempted to detain Brown, or merely attempted to hold Brown back from behind by pulling Brown's arms behind her back, is immaterial. Officer Grooms is not a defendant, and her actions with regard to Brown were cited merely as superfluous evidence that Brown was having to be physically restrained and blocked from interfering with Officer Reed's and Miller's detention of Pannell.

Accordingly, to the extent there are any genuine disputes of fact created by Defendants' statement of the facts, those facts are immaterial.

**II.   Zachary Miller is entitled to qualified immunity on the excessive force claim.**

Officer Miller is entitled to qualified immunity for his use of force against Plaintiffs regardless of whether Pannell's detention was unlawful because he either reasonably suspected Plaintiffs had committed a crime or reasonably believed that probable cause existed to arrest them. Because Plaintiffs both resisted arrest, any additional force that was used to subdue and restrain them was objectively reasonable and justified. A police officer has qualified immunity from liability if the facts demonstrate he had a reasonable belief that probable cause existed—*i.e.*, he reasonably believed the arrestee had committed a criminal offense. *Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir. 1988).

2

It is irrelevant to the probable cause analysis with respect to Brown's assault whether, as Plaintiffs argue, the contact by Brown was "accidental or incidental." Officer Miller reasonably believed that he had been assaulted by Brown when he felt apprehension and contact, looked up from Pannell, saw Brown standing over him, and pushed her back. Even if it was "speculation" on his part that Brown was the one who in fact had made contact with him because, at the precise moment of contact, his focus was on Pannell, his speculation was reasonably based on his observation of Brown immediately following the contact.

Regarding Officer Miller's reasonable belief that probable cause existed to arrest Brown for obstruction of justice, Plaintiffs imply that Brown could not have been obstructing because the officers' detention of Pannell was unlawful. Plaintiffs focus their argument on their allegation that Officer Miller intentionally delayed the traffic stop. Thus, they attempt to obfuscate the fact that, at the time that Brown physically interfered with the officers' detention of Pannell, Pannell was being lawfully detained because he had refused to exit the vehicle despite Officer Reed's orders for him to do so. "[T]he United States Supreme Court held that 'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches or seizures.'" *Foreman v. Commonwealth*, No. 0401-15-1, 2015 Va. App. LEXIS 388, at *7 (Ct. App. Dec. 22, 2015). "During the course of a traffic stop, an officer may take certain steps to protect himself, such as asking the driver and any passengers to exit the vehicle." *Commonwealth v. Smith*, 281 Va. 582, 598, 709 S.E.2d 139, 147 (2011) (citing *Maryland v. Wilson*, 519 U.S. 408, 414-15, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997)).

Furthermore, Plaintiffs' argument that Brown "merely interceded with her words" fails for two reasons.

3

First, Brown physically interceded twice, as can be seen in the footage. The first time, she charged into Officer Grooms, knocking her body worn camera to the ground. The second time, she rushed toward her son Pannell while he was being restrained on the ground by Officers Reed and Miller and made contact with Officer Miller, sending a jolt into Officer Reed.

Second, the cases cited by Plaintiffs in support of their proposition that obstruction of justice "demands more than just words" do not stand for that proposition. Rather, they stand for the proposition that obstruction requires more than just indirect opposition to, or failure to cooperate with, the officer's task. *See Ruckman v. Commonwealth*, 28 Va. App. 428, 429, 505 S.E.2d 388, 389 (1998); *Nazario v. Gutierrez*, 103 F.4th 213, 228 (4th Cir. 2024). Obstruction requires opposition or resistance by "direct action" or conduct that "*impedes or prevents*" the officer from performing his task. *Id.* Plaintiffs are mistaken that Brown's obstruction is nullified simply because the officers were not ultimately *prevented* from searching and arresting Pannell. Brown's, and indeed Sandidge's, actions certainly rose to the level of direct opposition to, resistance to, and impeding of the officers' performance of their lawful tasks.

Speaking of Sandidge, Officer Miller only used force against her after she had resisted being detained by Detective Miller and had caused herself and Detective Miller to fall backwards onto the ground. Officer Miller only used enough force necessary to remove Sandidge from atop Detective Miller and restrain her so that Detective Miller could handcuff her.

Officer Miller is entitled to qualified immunity on the excessive force claims.

**III.    Reed is entitled to qualified immunity on the excessive force claims.**

Despite the fact that the video evidence clearly shows that Officer Reed did not use any force whatsoever against either of the Plaintiffs, Plaintiffs assert that Reed is liable for excessive force against them because he ordered the other officers to put Plaintiffs in handcuffs without

4

justification. Setting aside for a moment the argument that there was no justification for putting Plaintiffs in handcuffs at the time Reed made the order, Reed's order did not directly cause Plaintiffs' alleged injuries. "In order to hold an officer liable for excessive force, his actions must have directly and proximately caused the Plaintiff's injuries." *Plummer v. Goodwin*, Civil Action No. 8:07-2741-TLW-BHH, 2009 U.S. Dist. LEXIS 124298, at *15 (D.S.C. Nov. 10, 2009) (citing *Shaw v. Stroud,* 13 F.3d 791, 800 (4th Cir.1994) and *Slakan v. Porter,* 737 F.2d 368, 376 (4th Cir.1984)).

Plaintiffs' alleged injuries due to Officer Miller's and Detective Miller's use of force are minor abrasions of the skin and emotional or psychological injuries. Officer Reed's order was merely to "put them [the Plaintiffs] in handcuffs." He made the order with a reasonable suspicion that they had committed a crime. He did not order that they be taken down to the ground or that any additional force beyond handcuffing be used. No reasonable officer in Reed's circumstances would know that he would be violating Plaintiffs' constitutional rights by merely ordering that they be placed in handcuffs.

As for the argument that Reed's order was unjustified, the video and testimonial evidence on the record shows that Officer Reed had, at least, a reasonable suspicion that Plaintiffs had committed obstruction of justice and—in the case of Brown—assault. Plaintiffs had repeatedly verbally and—in the case of Brown—physically opposed and interfered with the Officers in the performance of their detention and investigation of Pannell.

Accordingly, Officer Reed is entitled to qualified immunity on the excessive force claims.

**IV.     R. Miller is entitled to qualified immunity on the excessive force claim.**

Plaintiffs do not oppose and thus concede Detective Miller's arguments for his entitlement to qualified immunity on the excessive force claim by Aquasha Sandidge. Accordingly, Detective Miller is entitled to summary judgment on the excessive force claim.

**V.     The Officers are entitled to qualified immunity on the unlawful seizure claims.**

The Officers are entitled to qualified immunity on the unlawful seizure claims because they had the requisite reasonable suspicion to detain Plaintiffs, as well as reason to believe that probable cause existed to arrest Plaintiffs. The reasons for their reasonable suspicion and probable cause are thoroughly detailed in the Officers' previous memorandum.

Plaintiffs appear to argue that if a jury were to agree with them and conclude that Officer Miller intentionally delayed the traffic stop, that such would essentially justify any obstruction or assaults by Plaintiffs that followed. To the contrary, "if a suspect's response to an illegal stop 'is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime.'" *United States v. Sprinkle*, 106 F.3d 613, 619 (4th Cir. 1997) (citing *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982)).

Moreover, even if Plaintiffs did correctly believe that Pannell was being unlawfully detained due to Officer Miller's alleged delay, Pannell would have shifted his detention from unlawful to lawful when he refused to exit the vehicle despite Officer Reed's order to do so. Thus, any obstruction or assaults committed by Plaintiffs after Pannell's refusal to exit the vehicle were indeed unlawful and justified Plaintiffs' arrests.

**VI.    The Officers are entitled to qualified immunity on the malicious prosecution claims.**

Even if the Officers did not actually have probable cause to charge Plaintiffs, they are entitled to qualified immunity because they had a reasonable basis to believe that probable cause existed, for the reasons noted previously.

Plaintiffs argue that the Officers' malice is demonstrated by "examples of false statements made by the officers to . . . justify the false criminal charges they took against" Plaintiffs. First, any statements made by the officers after the events occurred do not change the events themselves, which, as argued above, gave the officers reasonable basis to believe that probable cause existed to charge Plaintiffs with obstruction and assault. Thus, any such statements do not negate the Officers' observable justifications for charging the Plaintiffs accordingly. Second, as for whether such statements demonstrate a malicious intent or collusion by the Officers, Defendants would assert that there is a much more likely and innocent explanation. After high-intensity, stressful events, people's short-term memories can be faulty. Police officers are not immune from that human trait.

Because the Officers had reasonable basis to believe that probable cause existed to arrest and charge Plaintiffs with obstruction and assault, they are entitled to qualified immunity on the malicious prosecution claims.

**VII.    The Officers are entitled to summary judgment on Plaintiffs' state law claims.**

Plaintiffs' state-law assault, false imprisonment, and malicious prosecution claims rise and fall with their equivalent constitutional claims. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994).  For the reasons discussed above, the Officers' conduct was reasonable under the circumstances and did not violate Plaintiffs' constitutional rights. To the extent constitutional

7

boundaries were crossed, the Officers are entitled to qualified immunity. Therefore, Plaintiffs' state law claims fail as a matter of law. *See Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009).

Additionally, the Officers are entitled to state law good faith immunity because, as detailed above, the Officers had a reasonable basis to believe that probable cause existed to arrest (and charge) Plaintiffs and to use the force required. *De Chene v. Smallwood*, 226 Va. 475, 479-80 (1984).

Finally, despite Plaintiffs' assertion that the Officers' false statements demonstrate malice toward the Plaintiffs, there is simply no evidence on the record that the Officers held any malice or ill will toward the Plaintiffs. On the contrary, they acted reasonably under the circumstances, had reasonable bases to believe that probable cause existed to arrest and charge Plaintiffs, and used only the force that was necessary to carry out Plaintiffs' arrests when met with active resistance. Even still, Plaintiffs did not require or request any medical attention following their arrests. Any false or inconsistent statements allegedly made by the Officers after the incident were most likely the result of faulty memory following a stressful event. Moreover, statements made after the fact do not change the actual recorded events, which justify the Officers' actions. Accordingly, the Officers are entitled to summary judgment on the state law claims as well.

## CONCLUSION

For the foregoing reasons, Seth Reed, Zachary Miller, and Robbin Miller respectfully request that the Court grant their motion for summary judgment and dismiss the Plaintiffs' claims with prejudice.

SETH REED, ZACHARY MILLER, and ROBBIN MILLER

By /s/ John R. Fitzgerald
Jim H. Guynn, Jr. (VSB #22299)
John R. Fitzgerald (VSB #98921)
GUYNN WADDELL, P.C.
415 S. College Avenue
Salem, Virginia 24153
Phone: 540-387-2320
Fax:    540-389-2350
Email: jimg@guynnwaddell.com
            johnf@guynnwaddell.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of December, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

M. Paul Valois (VSB 72326)
James River Legal Associates
7601 Timberlake Road
Lynchburg, VA 24502
T: 434-845-4529
F: 434-845-8536
Email: mvalois@vbclegal.com
*Counsel for Plaintiffs*

/s/ John R. Fitzgerald
Jim H. Guynn, Jr. (VSB # 22299)
John R. Fitzgerald (VSB # 98921)
GUYNN WADDELL, P.C.
415 S. College Avenue
Salem, Virginia 24153
Phone: 540-387-2320
Fax:    540-389-2350
Email: JimG@guynnwaddell.com
            JohnF@guynnwaddell.com
*Counsel for Defendants*

9